JOHN MILLER, Respondent, v. STEPHEN PROUGH, Appellant.

Kansas City Court of Appeals, April 5, 1920.

1.  ANIMALS: Liability of Owners of Dogs: Joint Tort-feasors: Separate Suits. Where the dog of the defendant and the dog of a third person set upon, attack, kill and maim the plaintiff's sheep the liability of the owners under section 855 Revised Statutes 1909, is not a joint liability but each is responsible for the damage done by his dog, as he was under the common-law rule; so that the filing of a suit and settlement thereof with the owner of the other dog does not relieve defendant of his liability. Even if defendant and the owner of the other dog were jointly liable, the settlement by plaintiff with the other owner could be made under Laws 1915, p. 268, without releasing the defendant.

2.  ———: Damages: Evidence. Where there is evidence as to the comparative sizes of the two dogs which made the attack, of their strength and capacity and of the manner of their attack, there is sufficient evidence to go to the jury on the question of damage each dog had inflicted.

3.  ———: Recovery of Penalty: Owner of Sheep. The penalty for failure of the owner of the dog which has killed or maimed sheep

to kill the dog after notice may be recovered by the owner of the sheep.

4. ———: **Failure to Kill Dog: Notice.** The statute inflicts a penalty of $1 a day for each day that elapses after notice to the dog owner until the dog is killed. *Held*, that such notice need not be written but means actual notice brought home individually and personally to the dog owner.

5. ———: **Maimed.** Where defendant nowhere specifically challenged the plaintiff's right to recover for sheep that were injured but not "maimed" but joined in instructions with plaintiff using the word 'maimed' without definition he cannot complain.

Appeal from Macon Circuit Court.—*Hon. Vernon L. Drain,* Judge.

AFFIRMED.

*E. O. Jones, Saxbury & Hall* and *Fogle & Fogle* for respondent.

*Campbell & Ellison, Nat M. Shelton* and *Higbee & Mills* for appellant.

TRIMBLE, J.—This is an action under section 855, Revised Statutes 1909, which provides that:

"In every case where sheep, or other domestic animals are killed or maimed by dogs, the owner of such animals may recover against the owner or keeper of such dog or dogs the full amount of damages, and the owner shall forthwith kill such dog or dogs; and for every day he shall refuse or neglect to do so, after notice, he shall pay and forfeit the sum of one dollar, and it shall be lawful for any person to kill such dog or dogs."

The petition is in two counts, the first charge that on February 2, 1916, defendant's dog, in company with another dog, killed two of plaintiff's sheep outright and maimed and injured 55 others so that twenty-eight of them died thereafter and the other 27 head were damaged. The value of the 30 sheep thus killed was fixed at $360, the damage to the others was placed at

$162, and judgment was prayed for the aggregate sum of $522.

The second count set out the above facts and alleged that on the date aforesaid plaintiff gave to defendant notice of the killing and maiming of said sheep by his dog but that said defendant, after receiving said notice, failed, neglected and refused to kill his said dog, and judgment was prayed in the sum of $1 per day for eash day of such failure after February 16, 1916.

The answer denied generally the facts set out in both counts and then charged that plaintiff, in bringing a similar suit against the owner of the other dog and in settling the same by agreement with said other owner, had settled his cause of action against the defendant.

A trial was had and at the close of plaintiff's case, and again at the close of the entire case, the defendant offered a general demurrer to the evidence under each count. These were overruled and the case went to the jury which returned a verdict of $187 on the first count and $81 on the second. From a judgment thereon defendant has appealed.

It is first urged that the demurrers to the evidence should have been sustained for the reason there was no evidence that defendant's dog was one of those offending. This contention is untenable. There was substantial evidence from which the jury could find that defendant's dog was one of the two that attacked the sheep. According to the evidence most favorable to plaintiff, the following facts are disclosed:

Plaintiff, upon returning to his farm about 4 o'clock in the afternoon found two dogs attacking his sheep. One was a collie, long haired, yellow, with white on breast and neck, and brown or brindle on his neck and hips. He carried his tail in a peculiar way, it having a little twist to one side about four inches from the end thereof. This corresponds to the markings of defendant's dog which was a collie. The other dog was rather short haired, black and white spotted, but of no particular breed.

The appearance of plaintiff on the scene caused the dogs to desist temporarily, but plaintiff, after calling upon a passing neighbor to help, went into the house and telephoned to friends for further assistance, and while he was doing so, the dogs again returned from their hasty retreat and caught another sheep. The dogs were of equal size and strength and their method of attack, at all times when seen, was that both dogs would simultaneously attack each sheep, one getting on each side thereof and tearing at the sheep's neck or flank. Plaintiff and a neighbor tried to get close to the dogs but only the collie lingered and he would not allow the men to get closer to him than 50 feet and finally he too left, going in the same direction the other dog had gone, which was in the general direction of defendant's home and the home of James McNabb, who, as it was afterwards discovered, was the owner of the other dog. The men, with the help of the friends called over the telephone, traced the other dog to McNabb's house and found it with blood on its head, sides and shoulders. Defendant lived about 2¼ miles southeast of plaintiff's farm and McNabb lived about a quarter east of defendant's place. It was dark when McNabb's house was reached and after his dog was examined plaintiff went from there to defendant's house, consequently it was after dark when he got to the latter place.

Defendant, on being informed the dogs had been in plaintiff's sheep, said he had heard the news as it went over the telephone. Plaintiff requested defendant to bring out his dog which was in the house, and also to furnish a lantern so that the dog could be examined. Defendant said he did not have a lantern, but brought the dog out carrying him by the fore feet with his back next to defendant's body and the dog's belly to the front. He carried the dog to a window which looked out upon the porch and letting the dog down on his hind feet held him in that position by the fore feet while plaintiff examined him as best he could in that way by the light that shown from the window. The

marking on the dog correponded with those of the collie, plaintiff saw at his sheep, but in that position the dog looked a trifle larger than the one who did the mischief, and plaintiff said so. Defendant said his dog was not the one, and he had been in the house all day and stays in the house all the time. Defendant told plaintiff of other persons who had collie dogs in the neighborhood, and the next day plaintiff examined these dogs but found none corresponding to the one he had seen in his sheep. After doing this, he again returned to defendant's house and asked to see the dog and was told that he was in the house, but defendant went around the house and brought him out of the wood-shed. He asked plaintiff how the dogs, to whom he had referred the latter, compared with the dog found in his sheep. Plaintiff told him they did not correspond at all, and again looked at defendant's dog but did not say whether it was or was not the guilty one. A few days later plaintiff took the neighbors, who had seen the dogs the evening of the attack, to defendant's home and they there positively identified his dog as being the guilty dog, and so testified at the trial.

Plaintiff, at the time of the identification, also told defendant his dog was guilty and demanded of him that he pay the damage and kill the dog, all of which defendant refused to do. There was other evidence from which the jury could find that the dog was not in the house all that afternoon as defendant and his witnesses claimed. Under all the foregoing circumstances it was clearly for the jury to say whether defendant's dog was one of the two that did the damage. [Fletcher v. Krenning, 186 S. W. 587.] Consequently the verdict cannot be disturbed on the ground that there was no substantial evidence that defendant's dog attacked the sheep.

The evidence discloses that two of the sheep were killed outright, 28 were so badly damaged that they died within six weeks thereafter and 27 were mashed and chewed around their necks and flanks, depreciating

their value. It also discloses that plaintiff brought a similar suit against McNabb praying a similar judgment covering the entire loss, and that said suit was settled for $150, the record reciting that the suit was "dismissed and settled and costs paid by the defendant."

It is therefore urged that plaintiff's settlement with McNabb is at bar to this action. This objection is without merit, for even if the two owners of the dogs were jointly liable, or were joint tort-feasors, plaintiff could settle with one owner for the damage done by his dog without releasing the other. [Laws 1915, page 268.] The dog statute does not make the two owners jointly liable however and unless it does, each owner is liable only for the damage done by his dog. This is the rule at common and also under statutes · such as ours. [2 Corpus Juris., 101, Mohre v. Wright, 108 N. W. 865 (Minn.); Buddington v. Shearer, 37 Mass. 477.] In some States the statute makes the owner of each dog liable for the damage done by all. [McAdams v. Sutton, 24 Ohio State 333; Kerr v. O'Connor, 63 Pa. 341; Remale v. Honohue, 54 Vt. 555; Worcester County v. Ashworth, 160 Mass. 186; Grant v. Ricker, 74 Mo. 487.] With reference to the damage, however, our statute section 855, supra, changes the common-law rule of liability only in so far as it relieves the plaintiff of the necessity of showing scienter. [Holmes v. Murry, 207 Mo. 413, 419; Jacobsmeyer v. Poggswoeller, 47 Mo. App. 560, 563; Mohre v. Wright, 108 N. W. 865, 867.] As each owner is liable only for the damage done by his dog, it cannot be rightfully said that when plaintiff settled with McNabb he settled for the entire damage, especially as the amount he received was less than half of the damage found by the jury. The McNabb settlement is no bar to this action.

It is urged against the evidence under the first count that there is nothing to show how much damage defendant's dogs did and hence plaintiff's claim for damages must fail on that account. We think there was sufficient evidence from which the jury could say

that defendant's dog did half the damage. The evidence is that the two dogs were of equal size, strength and capacity. They actually did their work together both dogs attacking each sheep one getting on one side and the other on the other. On this point, in Buddington v. Shearer, 37 Mass. 411, 479, it is said—

"There may be some difficulty in ascertaining the *quantum* of damage done by the dog of each, but the difficulty cannot be great. If it could be proved what damage was done by one dog, and what by the other, there would be no difficulty; and on failure of such proof, each owner might be liable for an equal share of the damage, if it should appear that the dogs were of equal power to do mischief, and there were no circumstances to render it probable that greater damage was done by one dog than by the other."

It is further insisted that the demurrer to the evidence should have been sustained as to the second count for another reason. As stated, this count is for the statutory penalty of $1 for every day the defendant refused to kill his dog "after notice." Defendant contends that *written* notice is required. The statutes does say so in terms. Nor does it state that the notice is to be *given* by any one, nor that it is to be *filed* or *served*. If it did, these would imply that the notice must be in writing. Foley v. Mayor, etc., of N. Y., 37 N. Y. Supp. 465; Norton v. Mayor, etc., of N. Y., 38 N. Y. Supp. 90.] It is well settled that where notice is required to be taken as a step in legal proceedings in court or before a counsel or board, the notice must be in writing, since otherwise the court or board would have no record of such step. [State v. Supervisors of Elba, 34 Wis. 169, 171.] And our statute, section 1788, Revised Statutes 1909, requiring notices to be in writing have reference to notices required as a step in legal proceedings and the section is by its terms confined to that chapter. It has no application to notices required elsewhere. [Tyan v. Kelley, 9 Mo. App. 396, 398.] It is true, the rule is well established that when a

statute requires notice to be given to a person for the purpose of creating a liability *personal notice* is intended. [Haldane v. U. S., 69 Fed. 819, 822. ] But personal notice does not mean that the notice must be in writing. It means merely that the notice must be express, actual notice to the person as contradistinguished from implied or constructive notice, unless there is in the statute authority permitting constructive notice. And this is what our section 10185, Revised Statutes, 1909, supplies. It permits a service upon a member of the family 15 years of age in all cases where, without such statute, notice would have to be given to the individual in person. This is all the effect section 10,185 has upon the "notice" called for in the statute requiring the own-ers of a sheepkilling dog to kill him. There is no statute applicable to the matter now under consideration which says notice must be in writing. The word "notice" is not a technical word and while it can have various meanings yet "the meaning to be given it by the courts is to be controlled largely by the context and by the purpose of the enactment." [Jackson County v. Schmid, 141 Mo. App. 239, 232; Backes v. Decumha, 126 N. Y. 293.] Words in a statute "shall be taken in their plain or ordinary and usual sense." [Section 8057.] When the context in which the word "notice" is used in section 855 and the purpose of the enactment are considered, it will be seen that the statute is dealing with the cause of action an owner of domestic animals, killed or maimed by a dog or dogs, has against the dog owner for such damage. Under the common law the dog owner, in order to be liable, had to be shown to have had notice of the dog's bad habits in that regard or his inclination to commit such injuries. [1 R. C. L. 1091.] Such prior notice was not something which another had to affirmatively present or give to the owner. As there used, it merely meant that *scienter* must be shown, and while it had to be a knowledge personal to the owner, it did not have to be actual *absolute* knowledge; it was sufficient to show that the owner had said or heard

enough to convince a man of ordinary prudence of the animal's inclination. [1 R. C. L., 1091, 1117.] The statute, in protection of the sheep and other animal industries, changed the common-law rule so as to eliminate the necessity of showing notice or knowledge in order to recover for animals killed or maimed by a dog and made the dog owner liable therefor regardless of notice. [Holmes v. Murray, supra.] The statute, in further protection of such animal industries, then seeks to rid the State of such dogs by compelling even the owner thereof to kill them under a penalty of $1 for every day he refuses or neglects to do so after notice that they have committed such acts. In other words, as to the damages recoverable under the statute, such notice as the common law required is omitted, but when it establishes the penalty portion it provides that notice must exist. Nothing is said about written notice, nor that any particular person shall give it or indeed that it must be "given to" the dog owner. He incurs the penalty if he does not kill the dog "after notice." It is true, this part of the statute deals with a thing unknown to the common law and as it imposes a penalty, this part should no doubt be strictly construed. But this is done when the "notice" therein referred to is construed to mean notice or information given directly to the owner individually and not such as may be implied from facts and circumstances. To construe this part of the Act strictly does not require us to interpolate the word "written" into the statute, nor to give a technical meaning to the word "notice" such as it would have in proceedings in court, but it is giving it the plain ordinary and usual sense of the word as meant in causes of action theretofore existing concerning such matters, but limiting it strictly to notice brought home individually and personally to the dog owner. In Jackson County v. Schmid, 141 Mo. App. 229, a case involving the collection of a penalty against a saloon keeper by the wife of an habitual drunkard, it was held that the notice did not have to

be in writing, although in that statute it was provided that the dramshop-keeper "shall have been notified by the wife" which is stronger than the statute now before us. It also was penal, and although said to be remedial, it is little more so than is the purpose of the statute to get rid of sheep-killing dogs. The statute require the dog owner to act affirmatively "after notice." It does not provide that anyone else must act affirmatively before he is required to act. Considering the subject-matter with which the section is dealing and the object the statute is intenled to accomplish, we do not feel warranted in writing into the statute a word that is not there and is not required by any other statute. Manifestly, the same view was recognized in Peeler v. McMillan, 91 Mo. App. 310, 316, since it was there held that, in view of the statutory duty to kill the dog after notice, the fact that the dog owner therein killed his dog shortly after the sheep were killed was some evidence of his knowledge of his dog's sheep-killing guilt.

It is next urged that the penalty can only be recovered by the State in view of section 4919, Revised Statutes 1909. But that section has no application to the penalty provided in section 855. [State v. Amor, 77 Mo. 568.] As the aforesaid dog statute was originally, the penalty went to the school fund. [Laws 1877, p. 326, secs. 8 and 9.] It continued that way in the statutes of 1879. [Section 5433, R. S. 1879.] But in the Revision of 1889 the law became as it is now, section 5433 of the former statute being repealed. [R. S. 1889, chapter 54.] As the Legislature did not want the penalty to go to the school fund, and as we are required to give some effect to it, the result is to hold that it goes to the party aggrieved or damaged. It would seem to go to him along with the other cause of action given him in the statutes.

The evidence shows that of the sheep damaged but which did not die as a result thereof, none of them were

"maimed" in the strict sense of the term. To "maim" an animal is to injure it in such way as to deprive it of, or render useless, one or more of its useful members. [Bailey v. State, 65 Ga. 410; Patton v. State, 24 L. R. A. 732; Brown v. State, 127 Ga. 287.] There is no question but that under the authorities the word "maim" does not mean to merely wound or disfigure but, with reference to a human being, means to violently deprive one of the use of such of his members as rendered him less able in fighting to defend himself or annoy his enemy. [Kelley's Crim. Laws, sec. 562; Pool v. State, 129 S. W. 1135; 2 Bouvier's Law Dic. (Ed. 1897) 291.] It is distinguishable from the word "wound" because "maim" implies a permanent injury, while "wound" is any mutilation or laceration which breaks the skin. [Black's Law Dictionary, 741.] It is true, the Third Edition of this last-mentioned work, adds: "But both in common speech and as the word is now used in statutes and in the criminal-law generally, it is not restricted to this common-law meaning, but signifies to cripple or mutilate in any way, to inflict any permanent injury upon the body, to inflict upon a person any injury which deprives him of the use of any limb or member of the body, or renders him lame or defective in bodily vigor. [See Regina v. Jeans, 1 Car. & K. 540; High v. State, 26 Tex. App. 545, 10 S. W. 238, 8 Am. St. Rep. 488; Baker v. State, 4 Ark. 56; Thurman v. State, 4 Tex. App. 588; Com. v. Newell, 7 Mass. 249.]" But an examination of the authorities cited as supporting the broad general statement quoted, will reveal that they do not do so. Wherever therein the word is given a broader and less strict meaning than is accorded it by the common law, it will be found that it is because the statute governing that particular case has used other words such as "disfigure" which, of course permits wider latitude. The definition of the word "maim," as used even in ordinary non-technical language, is "to deprive a person or an animal of any part or member of the body without which

his or its capabilities are in any way diminished."
[New Standard Dictionary, 1494.] Now the evidence
as to the sheep damaged, but which did not die, does
not show they were maimed in the strict sense of that
term but only that they were bruised and chewed about
the neck, and it seems the greatest damage from this
arose through the ewes prematurely losing their lambs.
The statute, section 855 which gives a cause of action un-
der circumstances which did not exist at common law, and
which requires the dog owner to kill the dog and au-
thorizes any one to kill the dog thus making him an
outlaw, makes this applicable only where the dog has
"killed or maimed" the animals. But in the next sec-
tion 856, permitting dogs to be killed under certain
other circumstances, the words "killing, wounding or
chasing sheep," etc., are used. Therefore, it is urged
by defendant that, as the statute has to be strictly
construed, it does not give a cause of action for sheep
that are merely wounded and are not maimed or killed,
but leaves the damages as to them as at common law.
We are relieved from the necessity of ruling directly on
this point since defendant in his instructions 5 and 7
construed the statute to give damages not only for the
sheep killed or maimed but also for those "attacked" and
"worried." This was a joining or an acquiescence in
the construction placed upon the statute by plaintiff
and hence defendant is bound thereby at least on this
appeal. It is urged in the brief on rehearing that as
a demurrer to the evidence was offered before such in-
structions were asked on defendant's part, he is not
to be held to such construction of the statute since it
was not until he was compelled by the court's ruling to
meet plaintiff on the latter's battle ground. The trouble,
however, with this position is that his demurrer was
general, nor specific. The demurrer went to the whole
cause of action and applied also to the sheep that
were killed. There was no instruction specifically chal-
lenging plaintiff's right to recover for the sheep that
were merely wounded but not killed nor maimed. [Tor-

rance v. Pryor, 210 S. W. 430.] This also answers the contention that the plaintiff erred in not defining "maimed." It is likewise untenable since defendant used the word in his instructions without definition. [Anderson v. American Sash & Door Co., 182 S. W. 819; Livingston v. City of St. Joseph, 174 Mo. App. 636, 638.]

The point made against plaintiff's instruction No. 2 that it permits the jury to guess at what damage was done by each dog when the jury could not find such damage without speculation, is without merit since, as we have seen, there is sufficient evidence in the case to enable the jury to say what part of the damage was done by defendant's dog without speculating. The charge that the instruction permits the jury to award plaintiff the whole damage done by both dogs in incorrect. The instruction nowhere says that, but on the contrary says, "plaintiff is entitled to recover from defendant the amount of the damage, if any, done by defendant's dog, as elsewhere defined in these instructions," and then goes to give the proper method for ascertaining the damage caused by reason of the sheep that were killed and the damage to those that did not die, and authorizing the jury, in each instance, to find such damage and deduct therefrom the damage they find from the evdence was done by the other dog.

Complaint is made of plaintiff's instruction No. 3, which is as follows:

"The court further instructs the jury that if you find for the plaintiff on the first count in his petition, then it is not an absolute essential to plaintiff's recovery that he prove what particular damage was done by defendant's dog and what particular damage was done by the other dog; for if you find that both dogs were of equal power to do mischief and that there were no circumstances to render it probable that greater damage was done by one dog than by the other, then each owner is liable for an equal share of such damage; but if you find that the defendant's dog had greater or less

power than the other dog to do mischief, and that there were circumstances to render it probable that greater or less damage was done by defendant's dog than was done by the other, then the defendant is liable for the amount of the damages that you may find were done by his dog in proportion to his power and according to said circumstances when compared with said other dog.''

It is claimed that this instruction permitted the jury to resort to speculation and that this instruction is inconsistent with plaintiff's instruction No. 2. We see no inconsistency in in the instruction; and we think in view of the difficulty a jury would naturally have in apportioning the damage done by each dog, that an instruition such as plaintiff's instruction No. 3 was proper in order to direct their attention as to the manner in which they should arrive at the damage actually done by defendant's dog. An instruction of this kind tends to lessen the probability of the very thing occurring that defendant complains of, speculation by the jury as to what damage was actually done on the part of each dog. This instruction outlined for them a method by which they might arrive at such damage and such method was approved in the case of Buddington v. Shearer, supra.

There are other complaints made of the instructions but they are clearly without merit and it is not necessary to prolong this opinion further by going into them.

The point raised for the first time in the brief filed on rehearing that the petition states no cause of action because it did not allege the particular damage done by defendant's dog is without merit. The petition did not wholly fail to state any cause of action. It is alleged that defendant's dog and another dog killed plaintiff's sheep and prayed judgment for the entire damage. This did not destroy plaintiff's cause of action as to the damage done by defendant's dog. If there was a defect it was apparent on the face of the petition which was waived by the answer. [Section 1804, R. S. 1909.]

The judgment is affirmed. All concur.