Florence Bybee v. Sigmund S'Renco and Ray Angel, Appellants.

Division One, February 16, 1927.

1. **CONFIDENTIAL RELATION:** Attorney and Client. As relating to their dealings with each other and as affecting the question of confidence and trust, the relation of attorney and client, when once established, continues until the matters connected with the litigation have been completely closed. It is as much the duty of a lawyer to deliver to his client the moneys or notes received by him in settlement of a suit as it is to obtain judgment; and conveyances made in settlement of the client's right to such moneys and notes, appropriated by him, are made during a continuation of the confidential relation, and will be presumed to have been obtained by undue influence, except to the extent that they operated as a payment of reasonable and proper fees.

2. ————: ————: False Representations: Burden of Proof. The fiduciary relation of attorney and client having been established, the burden does not rest upon the client, in her suit to have conveyances of her real estate to him set aside, to prove that they were obtained from her by false and fraudulent representations, but the burden of proving the fairness of the transactions rests upon him; and where the evidence shows that he dealt unfairly and unjustly, if not dishonestly, with her, a judgment in her behalf is right, although the false representations alleged are not proven.

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2868, p. 898, n. 86. **Attorney and Client,** 6 C. J., Section 184, p. 672, n. 57; Section 211, p. 687, n. 23; Section 213, p. 689, n. 41; Section 214, p. 689, n. 48; Section 249, p. 707, n. 71.

Appeal from Circuit Court of St. Louis County.—*Hon. G. A. Wurdeman,* Judge.

Affirmed.

*Carl M. Dubinsky* and *Hyman G. Stein* for appellants.

(1) Defendant S'Renco at no time during the negotiations concerning the real estate in controversy occupied a fiduciary relationship towards the plaintiff; certainly he was not acting as her attorney or occupying a fiduciary relationship towards her at or about the time the warranty deed plaintiff seeks to have canceled was executed. Ryan v. Ryan, 174 Mo. 279. (2) There was no evidence to warrant or justify the court's finding that the warranty deed in controversy was obtained by false and fraudulent representations and without consideration. The only evidence attacking the validity of the deed was plaintiff's denial that she had signed or executed the same. To set aside a deed for fraud the fraud must be established by evidence going beyond a mere preponderance of the testimony and removing

all reasonable doubt. Weissenfelds v. Cable, 208 Mo. 515; Groff v. Longsdon, 239 S. W. 1087.; Nichols v. Wimer, 230 S. W. 343. (3) The encumbrances and indebtedness on the real estate in controversy were greater than the value plaintiff's evidence placed on it, and plaintiff therefore could have suffered no injury by executing the deed complained of to defendant Ray Angel, and equity therefore will not interfere. Anderson v. Taylor, 227 S. W. 84. (4) Even though it be held that the warranty deed plaintiff seeks to have canceled should be canceled and set aside, certainly this case is one that calls for the application of the maxim that "he who seeks equity must do equity," and also for the rule that "rescission looks to the establishment of the *status quo;*" and as a condition to cancellation of the warranty deed, the decree should have placed the parties *in statu quo,* and defendants or defendant Ray Angel should have been allowed a judgment for the moneys expended by her in protecting title to the real estate, and in reducing the indebtedness thereon, and in paying interest on the deeds of trust, and in maintaining and repairing the property, and in paying taxes thereon, and also payment of the unpaid notes secured by the second deed of trust (which were canceled by defendants in consideration of the execution of the warranty deed), together with interest thereon, should have been ordered, and a lien on said real estate should have been granted and declared in favor of defendants or defendant Ray Angel, to the extent of said items. Groff v. Longsdon, 239 S. W. 1086; Whelan v. Reilly, 61 Mo. 569; Kline v. Vogel, 90 Mo. 239; Johnson v. Railroad, 227 Mo. 423; First Methodist Church v. Berryman, 303 Mo. 475; Frazier v. Cook, 204 S. W. 392; Robinson v. Siple, 129 Mo. 208; 9 C. J. 1209. (5) The warranty deed which plaintiff here attacks was executed on March 20, 1920, and thereafter plaintiff abandoned the property in controversy and did not file this suit until May 23, 1922. By delaying her action for such a long period of time plaintiff was guilty of laches and will be deemed to have ratified the warranty deed, and also such a long lapse of time indicates strongly that plaintiff's claim of fraud is unfounded and untrue.

*J. E. Turner* and *Louis Hudson* for respondent.

Where the findings are manifestly for the right party, technical errors will not work reversal. R. S. 1919, secs. 1276, 1513, 1550, 1551; Burns v. City of Liberty, 131 Mo. 372; Barkley v. Cemetery Assn., 153 Mo. 300; King v. King, 155 Mo. 406; Hunters v. Bank, 158 Mo. 262; Redman v. Adams, 165 Mo. 60; Kansas City v. Block, 175 Mo. 433; Hamilton v. Crow, 175 Mo. 634; Cass v. Ins. Co., 188 Mo. 1; Walker v. Railways, 193 Mo. 453; Peterson v. Transit Co., 199 Mo. 321; Wagner v. Edison Elec. Co., 82 Mo. App. 287; Nulle

v. Lange, 84 Mo. App. 219; State ex rel. v. Stone, 111 Mo. App. 364; Nagel v. Ry. Co., 169 Mo. App. 284; McManama v. Ry. Co., 175 Mo. App. 43; Perry v. Van Matre, 176 Mo. App. 100; Moines v. Railway, 184 Mo. App. 106; Kretzer Real Estate Co. v. Cusack Co., 196 Mo. App. 596.

OTTO, J.—This is a suit in equity brought by the plaintiff to set aside a deed executed by her in March, 1920, to certain real estate in St. Louis County. The grounds upon which plaintiff seeks to set aside said deed are that at the time said deed was executed and long prior thereto the defendant Sigmund S'Renco was her attorney and occupied a fiduciary relation to her; further that plaintiff received no consideration for the execution of said deed, and that she was induced to execute the same by reason of her confidence in her attorney, as aforesaid, and by his false representations and deceitful conduct toward her.

The separate answers of the defendants deny each and every allegation in the petition. They further allege that the defendant Ray Angel, who was shown to be the sister-in-law of the defendant S'Renco, was the real purchaser of the real estate from the plaintiff, and that the sale was not one from client to attorney, but rather one from client to a stranger. The answers further allege that the sale of the property was free from any fraud or misrepresentations on the part of the defendants or either of them.

The facts out of which this lawsuit grows may be briefly stated as follows:

Prior to June 21, 1918, the plaintiff, Florence Bybee, was the wife of one Elmer Bybee and resided in the city of St. Louis. Sometime prior to June, 1918, the plaintiff employed the defendant, S'Renco, to institute a suit for divorce against her husband, Elmer Bybee. This suit was duly instituted and on June 21, 1918, a judgment was entered for the plaintiff. The defendant entered his voluntary appearance to the suit and prior to the date of the trial agreed upon a settlement of alimony in gross. This agreement was reduced to writing and filed with the court. By the terms of this agreement the defendant, Elmer Bybee, agreed to pay the plaintiff alimony in gross in the sum of $890 and also agreed to make certain monthly payments for the support of their minor children. Bybee also agreed to pay the defendant S'Renco's attorney's fees in the sum of $175. Bybee then paid both S'Renco and his wife by notes executed at the time and payable in monthly installments. It is admitted that S'Renco received full payment of his fee in the manner stated. Testimony for the plaintiff shows that S'Renco also received the notes representing the gross alimony due the plaintiff herein. It further shows that S'Renco never accounted to the plaintiff for any of said

notes or the proceeds thereof. That he obtained them on the date of the divorce and retained possession of them at all times thereafter. That the plaintiff at different times requested S'Renco to surrender the notes to her, but that he failed and refused to do so. The evidence also shows that S'Renco negotiated and discounted these notes without authority from the plaintiff and kept and retained the proceeds thereof. When pressed by the plaintiff for a settlement S'Renco finally admitted that he had discounted the notes and had spent the money. The evidence shows that in order to satisfy plaintiff he then induced her to purchase through him, if not from him, a piece of property in St. Louis County, hereinbefore referred to, the legal title to which appeared to stand on the record in the name of the defendant Ray Angel. This deed was executed in January, 1919.

The undisputed evidence further shows that this property was worth at the time not to exceed $3,000. At the time defendant S'Renco induced the plaintiff to buy this property and caused the defendant Angel to execute a deed to the same to plaintiff, the property was mortgaged for $2500 and was encumbered by a lien for delinquent taxes covering a period of four years and amounting to some two or three hundred dollars. As a part of the consideration of the conveyance of the property to plaintiff the defendants further induced the plaintiff to execute a second mortgage on the property to the defendant Ray Angel to secure the payment of notes aggregating $1200. In addition to all of this plaintiff released her claim on the defendant S'Renco for the alimony notes converted by S'Renco as aforesaid; in short, the defendants induced the plaintiff to pay for this property an aggregate sum of something like $4,500 whereas the undisputed evidence shows it was worth not to exceed $3,000.

The evidence shows that the defendant S'Renco at all times exercised dominion and control over the real estate above mentioned; that he permitted the plaintiff to move into the property without the payment of rent and live there from August, 1918, until January, 1919; that he arranged for the sale of the property to the plaintiff; that he supervised the execution of all the papers and that the plaintiff did not at any time deal directly with the defendant Ray Angel.

The evidence further shows that the plaintiff occupied the property above described for sometime after January, 1919. In March, 1920, she was unable to meet the payments due upon the first and second mortgages, whereupon the defendant S'Renco, while still acting as the attorney, advisor and friend of the plaintiff, induced her to execute a deed re-conveying the property to the "straw" woman, Ray Angel. This deed was also made without any cash consideration, but upon the agreement that the defendant S'Renco would have

the second mortgage canceled of record, which, the evidence shows, he did the following day.

The evidence further shows that the plaintiff is an uneducated woman and was and is inexperienced and unskilled in business matters; that the defendant S'Renco, on the other hand, was, at ˙the time of the transaction herein mentioned, a college graduate and a lawyer of several years' experience.

The defendant Ray Angel filed a separate answer in this case, but made no appearance at the trial and did not testify.

The judgment of the trial court found the issues in favor of the plaintiff and set aside plaintiff's deed executed in March, 1920. The court found that at the time said deed was executed the defendant S'Ranco occupied the fiduciary relation of attorney toward the plaintiff as client. The court further found that the defendant S'Renco had a substantial interest in the real estate at the time it was deeded to the plaintiff and after the property was re-conveyed by the plaintiff to the defendant Ray Angel. The court further found that the defendant S'Renco overreached the plaintiff and misled, deceived and defrauded her and that she received no consideration for the execution of the deed in March, 1920. The court further found that the defendant S'Renco was the agent of the defendant Ray Angel and dominated and controlled her and˙ dealt with the real estate as his own.

It is our opinion that the court might also have found as a fact that the defendant S'Renco was at all times the real owner of the real estate above described, although it stood on the records in the name of his sister-in-law, Ray Angel.

The chief contention made by the defendants for a reversal of this case is that at the time the plaintiff executed the deed to the defendant Ray Angel in March, 1920, the defendant S'Renco was not the attorney of the plaintiff and did not occupy a fiduciary relation toward her.

The defendants further contend that since the defendant S'Renco did not occupy a fiduciary relation toward the plaintiff in March, 1920, the burden was upon the plaintiff to prove that the deed obtained from her in 1920 was obtained by false and fraudulent representations, and that having failed to make such proof the judgment of the trial court should be reversed.

It is admitted that the defendant S'Renco was employed by the plaintiff as her attorney in 1918. It is admitted that while acting as her attorney he received from her former husband, Elmer Bybee, notes aggregating $890, representing alimony in gross obtained in the divorce suit. Plaintiff's evidence shows beyond all doubt that the defendant S'Renco kept and embezzled all of said notes and that she never received one single cent of the proceeds thereof. The evi-

dence further shows that he continued to act as advisor and friend of the plaintiff from 1918 until the deed sought to be set aside was executed in March, 1920.

The law applicable to conveyances of property from a client to her attorney is well settled to the following effect:

"The relation of attorney and client has always been regarded as one of special trust and confidence. The law therefore requires that all dealings between an attorney and his client shall be characterized by the utmost fairness and good faith, and it scrutinizes with great closeness all transactions had between them. So strict is the rule on this subject that dealings between an attorney and his client are held, as against the attorney, to be prima-facie fraudulent. and to sustain a transaction of advantage to himself with his client the attorney has the burden of showing not only that he used no undue influence, but that he gave his client all the information and advice which it would have been his duty to give if he himself had not been interested, and that the transaction was as beneficial to the client as it would have been had the client dealt with a stranger." [6 C. J. p. 686; Beagles v. Robertson, 135 Mo. App. 306; Barrett v. Ball, 101 Mo. App. 288.]

The above statement of the law has also been substantially approved in the following decisions of Missouri courts: Thompson v. Stearns, 197 Mo. App. 344; Mills v. Met. Street Railways Co., 221 S. W. l. c. 5; Morton v. Forsee. 249 Mo. 409.

In the case of Morton v. Forsee, supra, l. c. 443, this court said: "An attorney primarily sustains a confidential or trust relation to his clients, similar to that existing between a trustee and *cestui que trust*, guardian and ward, physician and patient, or principal and agent."

Before a fiduciary relation is established there is some difference of opinion as to the duty of an attorney to a prospective client but, as said in the Morton case, supra, "after a fiduciary relation between attorney and client has begun" even "agreements between them respecting the former's fee for services rendered and to be rendered will be zealously scrutinized and must be supported by clear proof on the part of the attorney that the amount agreed upon is fair and reasonable." In this connection the court approved the following extract from a decision of the Supreme Court of the State of Illinois: "The reason for the doctrine is to be found in the nature of the relation which exists between attorney and client. That relation is one of confidence and gives the attorney great influence over the actions and interest of the client. In view of this confidential relation, transactions between attorney and client are often declared to be voidable, which would be held to be unobjectionable between other parties. The law is thus strict, 'not so much on account of

hardship in the particular case, as for the sake of preventing what might otherwise become a public mischief.' '' [Cassem v. Heustis, 201 Ill. 208.]

The defendants contend that the relation of attorney and client had ceased at the time of the transaction hereinbefore mentioned. It is our opinion that it is as much the duty of a lawyer to deliver to his client the fruits of victory entrusted to him as it is to secure a judgment in the first instance. It is our further opinion that when the relation of attorney and client is once established it continues until the matters connected with the lawsuit have been completely closed.

"Where a relation of confidence is once established, either some positive act or some complete case of abandonment must be shown in order to terminate it. The rule must be applied as long as the interest arising from the relationship exists, although this may extend beyond the continuance of the relationship itself, and this doctrine *a fortiori* must extend to the attorney's settlement with his client of the very fruits of the litigation. . . .

"The rules above referred to apply with great strictness to purchases by an attorney of his client's property. Any assignment or conveyance of property by the client, particularly if it is of property involved in the litigation, will be presumed to have been secured by undue influence, except to the extent that it operates as a payment of reasonable and proper fees; beyond such extent it will be considered in the same light as a gift from the client, and will be set aside in equity on application of the client or his representative, unless the proof of good faith and fair and honest dealing is of the strongest character. The rule applies equally to conveyances of property, real or personal, whether involved in the litigation or not, . . ." [6 C. J. p. 689.]

In view of the foregoing principles of law, which appear to be generally accepted throughout the country, we hold that the ruling of the court below was under the evidence eminently proper and correct.

In view of our holding that the evidence in the case justified the trial court in finding that a fiduciary relation existed between the plaintiff and the defendant S'Renco at the time the deed in question was executed, the plaintiff did not assume the burden of proving that the conveyance was executed by means of false representations made by the defendant S'Renco at the time; on the contrary, under the facts of the case the burden of proving the fairness of the transaction was upon the defendant S'Renco. The evidence in this case does not justify the belief that the defendant S'Renco dealt fairly and honestly with the plaintiff; on the contrary, it shows beyond question that he dealt unfairly, unjustly, if not deliberately dis-

honestly, with the plaintiff. It therefore becomes unnecessary to consider the second proposition urged by the defendants, to-wit: the evidence tending to show that the conveyance was made as the result of false representations. Since the relation of attorney and client existed and no consideration passed to the plaintiff for the execution of the deed and since the whole transaction was manifestly unfair and unconscionable the plaintiff was not compelled to prove that she was induced to make the deed by false representations.

The judgment of the trial court was for the right party. The evidence introduced justified the judgment of the court. It is the privilege of this court to defer largely to the opinion of the trial court in weighing evidence in an equity case, and under the evidence of this case this privilege should be and is exercised.

The judgment of the trial court is therefore affirmed. It is so ordered. All concur, except *Graves, J.*, absent.