**STATE of Missouri ex rel. Bernard W. MURPHY, Relator,**

v.

**Hon. Robert L. ARONSON, Circuit Judge, Respondent.**

No. 30312.

St. Louis Court of Appeals.
Missouri.

Dec. 15, 1959.

————◆————

Richard M. Stout, Philip M. Sestric, St. Louis, for relator.

Everett Hullverson, Orville Richardson, James E. Hullverson, William Mason, Jr., St. Louis, for respondent.

RUDDY, Judge.

This is an original proceeding in prohibition. Relator prays for a permanent writ prohibiting respondent, Hon. Robert L. Aronson, a Judge of the Circuit Court of the City of St. Louis, from proceeding to hear and determine a motion for alimony pendente lite filed in a divorce action, wherein relator was plaintiff, and to prohibit respondent from proceeding further in said cause. It is the contention of the relator that an order of the respondent setting aside a divorce decree previously entered is null and void.

On August 29, 1958, relator instituted a suit for divorce against his wife, Rosa Lee Murphy. Morris B. Kessler was the attorney for the relator in the divorce proceeding. On September 19, 1958, the defendant, Rosa Lee Murphy, entered her appearance in said divorce action and waived the issuance and service of summons upon her. She filed no answer. On October 21, 1958, an order of default and inquiry was entered and the case was set down for hearing on November 5, 1958. On the last mentioned date the divorce suit was heard before the respondent sitting as Judge of one of the Domestic Relations Divisions of the Circuit Court of the City of St. Louis. The relator appeared with his witnesses but defendant failed to appear. After hearing the relator and his witnesses, the respondent entered a judgment and decree of divorce in favor of relator. No motion for new trial was filed. Up to this point there is no dispute as to the facts. After the decree of divorce was entered the record presents only one fact issue. This involved what was said in a telephone conversation between the respondent and Morris B. Kessler, attorney for the plaintiff at the divorce hearing. At the time of the oral argument in this court it was stipulated by the attorneys for relator and respondent that the fact issue be submitted on the affidavits of respondent and Morris B. Kessler, which had been executed by them and filed in this proceeding.

We will state verbatim the portions of the affidavits covering the respective versions of the conversation that took place between respondent and Morris B. Kessler and will state verbatim other portions of the affidavits where deemed necessary. The balance of the respective affidavits will be summarized.

In the affidavit executed and filed by respondent, Hon. Robert L. Aronson, after reciting the steps leading to the entry of the decree of divorce, he stated that after recessing court during the late morning of December 2, 1958, he found a note on his desk asking him to call a certain man at the telephone number indicated on the message, which proved to be the number of the Streckfus Steamers. The respondent further stated that the man told him relator, Bernard W. Murphy, plaintiff in the divorce action, worked for the Streckfus Steamers; that Mr. Murphy had not told them of the divorce suit; that Mrs. Murphy had visited their office and had asked them questions about the divorce suit "that she heard he had instituted against her"; that they (the people at the Streckfus Steamers) "were fearful that Mrs. Murphy did not understand whatever was happening and that they feared perhaps she was being imposed upon." Respondent

further stated that he told the person he did not recall the case and would send for the file and call him again. Respondent then stated that after examining the file he called the man again and told him the date of the entry of the decree and asked the man if Mrs. Murphy had an attorney and was told that so far as the man knew Mrs. Murphy had no attorney. Respondent then stated in his affidavit:

"that after speaking to this man at Streckfus Steamers Company, I called Mr. Morris B. Kessler, the attorney for plaintiff, on the telephone at his office, this being done during the same afternoon of Tuesday, December 2; * * * I told Mr. Kessler that I had received this call from a man at Streckfus Steamers, but without mention of the name of the man; and that the heads of that company were concerned that Mr. Murphy might be imposing on his wife because she seemed to them not to be capable of understanding what had happened in the case and that I felt it my duty before the expiration of thirty days from the time of the entry of a decree, to set aside the decree and resume the matter under submission; then if Mrs. Murphy obtained an attorney, Mr. Kessler could talk to such an attorney and perhaps the decree would be re-entered without additional evidence after the two attorneys had conferred; I further told him that I was planning to leave the City to attend a meeting in New York City scheduled for December 4 and would depart by plane after court on December 3, the next day, so that I was calling him then while I still had a full day before my departure to explain that I thought the proper administration of justice required me to set aside the decree until there could be further investigation or time for an attorney to be engaged for Mrs. Murphy; that Mr. Kessler told me that if I felt I wanted to set aside the submission, it was perfectly

all right with him, because no suggestion of advantage being taken of the defendant should be disregarded; he further said that he was certain Mrs. Murphy had been fairly dealt with, because a piece of property was to be transferred to her by the agreement of the parties; that he had told Mr. Murphy not to deliver the deed to Mrs. Murphy until thirty days had passed, and that he was certain that the deed had not yet been delivered and that as a result no harm could come from the setting aside of the decree; again he assured me that if I believed such action as I suggested was the right thing to do, I should proceed to take such action; that after thus speaking with Mr. Kessler, I entered an order on the same Second of December, 1958, reading as follows: 'On Court's own motion, decree of November 5, 1958 is set aside and vacated, and cause is taken as re-submitted.' Signed, 'Robert L. Aronson, J.';

"That, thereafter as appears from the court file, on December 5, the firm of Hullverson, Richardson, Hullverson & Jeans entered appearance as attorneys for defendant (this action having been taken while I was out of the city); that on my return I noted the minute of this entry by counsel, and this was the first time the name of said attorneys or any of them had been mentioned in the course of this litigation; and no representative of said firm had ever contacted me concerning this case; that I next saw Mr. Kessler in the court room on his appearance in another case and asked if he and the Hullverson firm were having any discussions so that I might know what to do with the Murphy case; I understood from his answers that they were in contact with each other;

"That on January 16, 1959, at the request of the attorneys for the de-

fendant, a 'Motion for Allowance Pendente Lite' was listed on the motion docket of the Court; that Mr. Kessler then asked leave to withdraw as attorney for plaintiff * * *."

In the affidavit executed by Morris B. Kessler, adopted by relator and incorporated by relator as a part of his reply to respondent's return, he stated he was retained by Bernard W. Murphy to prosecute the divorce action. His version of the telephone conversation with Judge Aronson was stated as follows:

"At approximately the hour of 4:00 P.M. on the 2nd day of December, 1958, I received a telephone call at my office. The caller identified himself as Judge Robert L. Aronson and I have no reason to disbelieve that the caller was Judge Aronson. He stated in this call that he understood from information furnished to him by someone at Streckfus Steamers that Mrs. Murphy had been imposed upon in the divorce suit, that there was some question concerning her mental condition, and that he was setting aside the divorce decree. I stated to the Court that it was within his power to set aside decrees within 30 days of the date of their rendition, that being the law as I understood it, but stated that the fact was that Mrs. Murphy was taking advantage of Mr. Murphy, if anyone was being taken advantage of. The Judge stated that he was not asking me, that he was telling me that he was setting aside the divorce decree. I did not at any time consent to the setting aside of said divorce decree, nor was I authorized by Bernard W. Murphy at any time to consent to the setting aside or vacating of said divorce decree."

It is admitted by relator that Morris B. Kessler withdrew as attorney for him in the divorce action.

As shown by affidavit of respondent, an order setting aside the judgment and de-

cree entered November 5, 1958, was entered on December 2, 1958, and respondent ordered the cause resubmitted. On December 5, 1958, the firm of Hullverson, Richardson, Hullverson and Jeans entered their appearance as attorneys for the defendant in the divorce action, and on December 17, 1958, said attorneys filed a Motion for Alimony Pendente Lite and Attorneys' Fees in said action.

In view of our ruling, other matters and events which occurred subsequent to December 2, 1958, need not be related.

Relator contends that respondent had no jurisdiction to vacate the divorce decree entered in his favor on November 5, 1958, without first giving relator reasonable notice and an opportunity to be heard.

Relator does not challenge the power and jurisdiction of respondent to set aside the divorce decree on his own initiative. He concedes that under the provisions of Supreme Court Rule 3.25, 42 V.A.M.S., the trial court retains control over judgments during the 30 day period after entry of judgment and may reopen its judgment for good cause within that time.

■ As pointed out above, relator contends that this power and jurisdiction conferred on the court under the aforementioned Supreme Court Rule is subject to the qualifications that the trial court give to the parties reasonable notice and an opportunity to be heard on the new matter or issue inducing the court's intended action. There can be no question about the duty of the trial court to give the parties reasonable notice and an opportunity to be heard. Quinn v. St. Louis Public Service Co., Mo., 318 S.W.2d 316; Hoppe, Inc. v. St. Louis Public Service Co., Mo., 235 S.W.2d 347 and Lee v. Baltimore Hotel Co., 345 Mo. 458, 136 S.W.2d 695, 127 A.L.R. 711.

■ Relator in his first point takes the position that under the circumstances present when the respondent undertook to

set aside the divorce decree, the reasonable notice called for should have been in writing and served on the relator. He holds a written notice is necessary when notice has not been formally waived in open court. He admits that he has been unable to find any statutory direction for written notice. However, relator points to the provisions of Section 1.190 R.S.Mo.1949 (1957 Supp. Laws of 1957, p. 587, Sec. 1) 3 V.A.M.S. This section of the statutes deals with the methods of service whenever any of the statutes of this state require or imply that a notice shall be given. It has no application to the instant situation. Relator admits there is no statutory direction for service of notice under the instant circumstances.

Relator endeavors to find some support for his contention in the cases of State ex rel. Davidson v. Caldwell, 310 Mo. 397, 276 S.W. 631 and Miller v. Prough, 203 Mo. App. 413, 221 S.W. 159. Both cases involved statutes that had affirmative requirements of notice. Both hold that when notice is required under the statute, personal notice is intended, holding however that personal notice does not mean that notice must be in writing. The case of Miller v. Prough, supra, does not hold that written notice is required when the notice must be given pursuant to a statute. It does hold that when the statute requires a notice to be filed or served, without stating it should be in writing, that the requirements would imply that the notice must be in writing.

The case of Miller v. Prough, supra, was an action to recover a statutory penalty of $1 for every day the defendant refused to kill his dog "after notice." The action charged that defendant's dog was guilty of killing sheep owned by plaintiff. The court said: "There is no statute applicable to the matter now under consideration which says notice must be in writing. The word 'notice' is not a technical word, and, while it can have various meanings, yet 'the meaning to be given it by the courts

is to be controlled largely by the context and by the purpose of the enactment.' " 221 S.W. loc. cit. 162. The court refused to interpolate the word "written" into the statute. Plaintiff had orally demanded of defendant that he kill the dog. Plaintiff recovered a judgment in the trial court which was affirmed on appeal. We see nothing in the two cases relied on by relator that in any way supports his contention.

The case of Jackson County ex rel. Farley v. Schmid, 141 Mo.App. 229, 124 S.W. 1074, was an action by a wife against a dram shop keeper for selling intoxicating liquors to her husband after she had orally notified the dram shop keeper not to sell her husband any more intoxicating liquors. The statute, Rev.St.1899, § 3017, authorized recovery if the dram shop keeper "shall have been notified by the wife" not to sell intoxicating liquors to her husband, an habitual drunkard. The court held that oral notice was a sufficient compliance with the statutory requirement of notice.

Notice in a legal sense includes a situation where information concerning a fact is actually communicated to a person. Such information is regarded as equivalent in its legal effects to full knowledge of the fact. The term "notice" without a further qualifying phrase, does not involve the idea of great formality. 66 C.J.S. Notice § 2, p. 635.

There is and can be no contention by relator that his attorney did not receive notice of the court's intended action. The gist of relator's contention is that the notice given did not meet the requirements of "reasonable notice." Reasonable notice is defined to be such notice or information of a fact as may fairly and properly be expected or required in the particular circumstances. Black's Law Dictionary, 4th Ed., p. 1211; 66 C.J.S. Notice § 8, p. 642.

Did the notice given convey the necessary information and was it given

timely under the particular circumstances facing the respondent? The first part of the question must be answered in the affirmative. The affidavit of Morris B. Kessler indicates clearly he was informed of the intended action of the respondent. As to the timeliness of the notice, respondent's affidavit shows that he called the attorney for the relator immediately after learning the information that caused respondent's action. There was no delay and we think respondent notified the attorney for relator as promptly as the circumstances permitted.

The purpose of the law in requiring notice is that the party notified has an opportunity to be heard, therefore, the notice required should be given in such time as to permit an opportunity to be heard. Respondent in his affidavit stated that he told the attorney for relator that he "was calling him then while I still had a full day before my departure to explain that I thought the proper administration of justice required me to set aside the decree * * *." This was the equivalent of a full day's notice, which we think was a reasonable notice. Reasonable notice is one that provides an "Opportunity for a litigant to present his views as to the matters instantly before the court which may affect his rights * * *." Hoppe, Inc. v. St. Louis Public Service Co., 235 S.W.2d loc. cit. 350. In the case of Sterling Manufacturing Co. v. Hough, 49 Neb. 618, 68 N.W. 1019, loc. cit. 1020, it was said: "A reasonable time is such that the party notified will have ample time to prepare himself, and be able to be present at the time and place of hearing."

In the case of Baker v. Baker, Mo.App., 274 S.W.2d 322, the court examined the purpose of reasonable notice and in a fine opinion that indicates an exhaustive examination of cases and other authorities, found a one hour oral notice sufficient under the circumstances. The hearing involved in the Baker case was for the purpose of modifying a decree of divorce. In the divorce action before the respondent in the instant proceeding the intended action was to vacate a decree so that further investigation could be made. The Supreme Court in the case of Kleinschmidt v. Hoctor, 361 Mo. 29, 233 S.W.2d 649, a habeas corpus proceeding, held that two hours' notice given to petitioner of insanity hearing was reasonable under the circumstances. We rule that the notice given by respondent to relator's attorney in the instant proceeding satisfied the requirement of reasonable notice.

In the next point urged by relator he contends respondent exceeded his jurisdiction by vacating and setting aside the decree of divorce without giving him an opportunity to be heard. A determination of this point seems to depend on which of the two affidavits we adopt. Judge Aronson, respondent herein, is known to this court and is considered by us as one possessed of impeccable character. The same must be said by us about Morris B. Kessler, the attorney involved. The only explanation we can give about the apparent conflict in the two affidavits, as to what was said on the occasion in question, is that it was the result of a misunderstanding by the attorney for the relator of the court's intention and position in the matter. Our determination to adopt the affidavit of the respondent is not based on the credibility of the respective affiants. The statements in the affidavits present little conflict when closely analyzed. However, we treat the affidavit of the respondent in the same manner as if he had formally attached it to his order of December 2, 1958, setting aside the divorce decree. We consider the affidavit of the respondent as an explanation or narration of what occurred in the course of performing his judicial duties. If he had attached a similar statement to his order when made December 2, 1958, we would have it before us now as a part of the proceedings in the divorce action and would accord it

full consideration. Adopting the affidavit of respondent, as we do, we find that relator was given an opportunity to be heard.

The Hoppe case, supra, relied on by relator, merely provides that an "opportunity" to be heard be accorded the party notified. Obviously, if the party notified consents to the entry of the intended order of the court, no further action is required of the trial judge. He has sufficiently complied with the requirement if he accords an opportunity to be heard. There is nothing in the Hoppe case or the other cases cited herein that makes it mandatory to hold a hearing when consent is given to the court's intended action. An examination of the affidavit of the respondent shows that the attorney was told by respondent that he was calling while respondent "still had a full day" before his departure for New York City. This language indicates respondent was giving relator an opportunity to be heard within the 24 hours if such a hearing was desired. The parts of respondent's affidavit that indicate relator consented to the court's order and waived an opportunity to be heard are contained in the following statements: "Mr. Kessler told me that if I felt I wanted to set aside the submission, it was perfectly all right with him, because no suggestion of advantage being taken of the defendant should be disregarded"; "again he assured me that if I believed such action as I suggested was the right thing to do, I should proceed to take such action; * * *." There is nothing in these statements that indicates a desire for an opportunity to be heard, rather they show full consent to the court's intended action and, therefore, a waiver of the right to be heard.

In the case of Baker v. Baker, supra, a complaint similar to the one made by relator in the instant proceeding was made by the defendant. In the Baker case defendant charged that he "was not afforded an opportunity of appearing before the court, presenting testimony, (and) refuting and impeaching the statements made by plaintiff's attorneys." [274 S.W.2d 327.] It was conceded by defendant that his counsel did appear before the court but made no effort to present testimony or to indicate that he wanted to be heard. The court in answering this contention said: "There being no suggestion that counsel *then* indicated any such desire, certainly we should not and cannot indulge an assumption that the court would have refused any reasonable request by counsel. For, in the absence of proof to the contrary, there is always a presumption of jurisdiction and right action by a court of general jurisdiction." 274 S.W.2d loc. cit. 327.

While the attorney for relator states in his affidavit that he did not consent to the setting aside of the divorce decree, we think it significant that the affidavit fails to show he asked for an opportunity to be heard or indicated any such desire. We feel certain that had he requested such a hearing the court would have granted same. What other purpose did the court intend to serve when he told the attorney for relator that he was leaving for New York the next day after court and was calling while he still had a full day before his departure? We think it is manifest that respondent gave the relator an opportunity to be heard. Therefore, we conclude that this point relied on by relator must fail.

In the remaining point relied on by relator: he contends the authority of Morris B. Kessler as his attorney terminated when the decree of divorce was entered and, therefore, the attorney could not waive any of relator's rights. Relator relies on two cases in support of his contention. Neither case presents facts analogous to those in the present proceeding. The cases relied on by relator are Burgess v. Burgess, 239 Mo.App. 390, 190 S.W.2d 282, and Fernbaugh v. Clark, 236 Mo.App. 1200, 163 S.W.2d 999, 1006, 173 S.W.2d 646. Both cases involved attempted service on an attorney of motions to modify decrees of divorce. The motions to modify were filed

long after the divorce decrees were entered. The court held in each case that a motion to modify the divorce decree was in the nature of an independent proceeding and that notice to the attorney of record in the respective divorce actions did not confer jurisdiction of the court over the party to be notified of the modification proceeding. The court in each case based its ruling on the finding that the relationship of attorney and client had ceased with the termination of the litigation. The courts did say in both cases that the notice to the attorney was not binding on his client "except notice of appeal, or of a similar proceeding, in that particular suit." The notice of the respondent given to the attorney for relator in the instant proceeding was in connection with a proceeding in the divorce case wherein Morris B. Kessler was attorney of record for the relator.

Another factor present in the instant proceeding shows that the relationship of attorney and client between Morris B. Kessler and relator had not terminated when respondent notified the attorney of his intention to set aside the decree of divorce. As shown by the affidavit of respondent, the attorney for relator told respondent that a deed transferring a piece of property to Mrs. Murphy was to be delivered after the termination of the 30 day period following the entry of the decree of divorce. The relationship of attorney and client would not be terminated until all the matters relating to the divorce suit were closed. In the case of Bybee v. S'Renco, 316 Mo. 517, 291 S.W. 459, loc. cit. 462, the Supreme Court said: "It is our further opinion that, when the relation of attorney and client is once established, it continues until the matters connected with the lawsuit have been completely closed." All of the matters connected with the divorce action of relator against his wife had not been closed, therefore, the relationship of attorney and client continued.

In accordance with the views herein expressed, our preliminary rule of prohibition, heretofore issued, should be quashed. It is so ordered.

WOLFE, P. J., and ANDERSON, J., concur.