MICHAEL J. HURLEY, Appellant, v. UNIVERSAL CLAY COMPANY, PHIL R. TOLL, LOUIS L. SEIBEL, U. S. EPPERSON and ALFRED TOLL.

Division Two, June 3, 1919.

1. **APPEAL: From Order Overruling Motion To Set Aside Receiver's Sale.** From an order of the circuit court overruling a motion of a stockholder of a corporation to set aside a sale by the company's

receiver of its properties to pay debts, previously approved by the court, no appeal is provided by statute. The right to review being purely statutory, no such appeal will be entertained. Where other issues are presented, among them, whether the individual defendants have paid for their shares of stock and the duty imposed by law upon the receiver to conserve and collect the company assets and pay its debts, the sale is but a preliminary step in the proceeding, and the court's ruling upon the motion to set it aside is not a final judgment, but only an interlocutory order, from which there is no appeal.

2. ———: ———: **Substantial Evidence to Support Sale.** A motion to set aside a sale by a receiver of an insolvent company's plant, on the ground that the property was worth more than was received for it, that the notice of sale was insufficient, that others were not given the same opportunity to bid as the purchaser and that the receiver's report did not disclose the terms upon which the property had been sold, lies on the law side of the court, and in the presence of substantial evidence to support the action of the court in overruling the same, a review is not permissible.

Appeal from Jackson Circuit Court.—*Hon. Battle Mc-Cardle,* Judge.

Dismissed.

*John H. Lucas, William C. Lucas,* and *John F. Garner* for appellant.

*Gage, Ladd & Small, Morrison, Nugent & Wylder,* and *H. L. Hassler* for respondents. ·

WALKER, J.—This is an appeal from the overruling by the Circuit Court of Jackson County of a motion to set aside an order approving a receiver's report of sale.

A suit had been instituted in said circuit court by plaintiff as a shareholder, for the appointment of a receiver for the defendant, the Universal Clay Company. The petition alleged that the individual defendants, who were in official and actual charge and control of the property of the company, had not paid for their capital stock therein and had so wasted and mismanaged its affairs as to render the appointment of a receiver

necessary to protect the remaining assets from being dissipated and lost. The prayer asked that said defendants be enjoined from any further participation, official or personal, in the conduct of the business or management of the property of the company, and that the receiver appointed be directed to take charge of its entire property, enforce the payment by defendants of the capital stock subscribed for by them, and for general equitable relief.

The individual defendants, answering, denied the allegation of waste and mismanagement, and declared that the stock held by them had been paid for in full; that at the time plaintiff became the owner of stock in the company, which was in 1915, two years after its organization, and at all times thereafter, he had full and complete knowledge of the organization of the company, the manner in which its stock was paid and the condition of its business and affairs; that after so acquiring said stock plaintiff, by his attorney, inspected the stock book and minute books of the company and its articles of incorporation, and thereafter presented the certificates of stock so acquired for registry in his own name; that at the time plaintiff acquired said stock active operations at the plant of the company had ceased; that ever since said date no action had been taken by these defendants except that which was absolutely necessary to protect and preserve the property.

These defendants further stated that the company had no money with which to operate its property or to pay its debts; that the company cannot be operated with profit in its present condition; that it has an unsecured indebtedness of approximately $71,000, on account of moneys loaned and advanced to it, in addition to a deed of trust for the principal sum of $33,890.35, now a lien upon its property.

The defendants therefore prayed the court to be relieved of the demands of plaintiff; that a reference be had to determine and liquidate the indebtedness of the company, and that the receiver appointed be directed

to sell the property, pay the debts, and for such other and further relief as to the court shall seem just and proper.

After a hearing on the application of the plaintiff for the appointment of a receiver, with the consent of defendants, who were all present either in person or by counsel, the application was granted and a receiver was appointed. After qualifying by giving bond as required, he was directed to take charge of the property of the company and report his proceedings to the court, and apply from time to time for such further orders and decrees as might be deemed necessary. Under this order the receiver took charge of the property, and thereafter reported, among other things necessary for the information of the court, that he had found the company's business at a stand-still, and its plant inoperative; that it was burdened with debt, with no money on hand, and that the plant, consisting of kilns and other instrumentalities for the manufacture of fire bricks, was in a dilapidated and worn out condition, and that the implements and machinery were obsolete. That he had found the company to be wholly insolvent and unable to discharge its indebtedness; that its attempted operation would but involve it more deeply in debt and that a sale of the property, which consisted principally of a tract of land from which the clay products had been obtained, would be necessary to a realization of anything of value for the stockholders from the assets. The receiver therefore asked that an order be made for the sale of the property, the terms and conditions of same to be submitted to and approved by the court before the sale was consummated.

Thereafter, on the 19th day of October, 1915, all of the parties, plaintiff and defendants, being present by their respective counsel, the receiver's report was taken up and evidence heard thereon; after a consideration of same the court found, so far as pertains to the matter here at issue: "That the property of said company is encumbered by a deed of trust now amount-

ing to about $34,000; that in addition to said deed of trust said company is indebted in the sum of about $80,000; that there is no money on hand to pay said indebtedness; and it was ordered that the said report of the receiver be, and is, approved; that he be, and is hereby, authorized to borrow money for current expenses, and to give receiver's certificates therefor; that the property and plant of defendant, Universal Clay Company (describing it), be sold at public or private sale, to the highest and best bidder for cash, or on such other terms as he can best secure; that said receiver negotiate with and seek purchasers for, and advertise the sale of, said property in such newspapers or publications as in his discretion will give such sale due publicity; that he hold the bidding open until the 1st day of January, 1916, at which time he shall proceed to sell said property to the highest and best bidder as aforesaid, but not for a less sum than $———, said sale to be reported to this court for confirmation."

On the 19th day of January, 1916, the receiver presented to the court his report, wherein he stated that he had endeavored, by advertising, correspondence and personal negotiations, to obtain bids for the property; that he had been able to secure but one bid, which he submitted to the court. The receiver further stated that he believed "that further effort on his part to find a purchaser of said property will be of no avail, and he recommends that the bid herewith submitted, to-wit, that of Phil R. Toll, for $76,000, on the terms therein stated, be accepted, and that he be ordered to make a receiver's deed therefor."

The report further stated that the receiver and his attorney, in the endeavor to carry out the orders of the court, had visited and personally inspected the property of the Universal Clay Company, and had looked after its affairs carefully and diligently. There were present in court on this occasion the receiver and his attorney and the attorneys for defendants, but neither plaintiff nor his attorney appeared.

Before any proceedings were had with regard to said report, or sale, one of the attorneys for defendants called plaintiff's attorney on the telephone, and reminded him that the sale was to take place that day, and that the receiver was in court, and about to take up the question of the sale and its consummation. That counsel for plaintiff stated that the bid should remain on file, so that plaintiff might object to same; that counsel for defendants stated that it was the circuit judge's opinion that under the order, the sale should be made on that day; thereupon counsel for plaintiff stated he did not know whether he would appear; thereafter, before any proceedings were had, he called counsel for defendants over the telephone, stating that he did not care to come down. This testimony is undisputed.

Thereupon, the report of sale was submitted to the court, and the court ordered that said report, and the sale as therein reported, be approved, and ordered the receiver to execute a deed for the equity in the plant and property of the Universal Clay Company to Phil R. Toll, for the consideration of $76,000, to be paid as specified in his bid.

On the 4th day of February, 1916, plaintiff filed a motion to set aside the order approving and confirming the receiver's report of sale and directing him to make a deed. The grounds of this motion, in substance, are, that no sufficient notice of the sale was given; that the amount offered was inadequate; that the unpaid stock subscriptions, personal assets and choses in action of the company were in excess of its liabilities; that plaintiff was not given an opportunity to object to said sale and thereby denied his day in court; that the court refused to direct the receiver to sue for the unpaid subscriptions before approving and confirming the sale; that the court's action resulted in a taking of plaintiff's property without due process of law; that the report of the receiver of the sale was indefinite in not disclosing the terms and conditions upon which the property had been sold; that the notice was insufficient to inform prospec-

tive purchasers of the conditions upon which the property could be purchased; that there was but one bid and others were not given the same opportunity as the purchaser to bid on the property.

Wherefore, it is prayed that the order approving the sale be set aside and that all proceedings therein be stayed until the unpaid stock of said company has been paid and for such other orders as may be just and equitable.

Upon the hearing of this motion, the court permitted evidence to be offered which showed that the receiver had advertised the property for sale in certain trade journals devoted to that character of industry, and that no other notice had been given; that the minimum price of the property was not fixed by the court; that a motion had theretofore been filed by plaintiff, and overruled, to vacate the order of sale, on the ground that the company's assets were sufficient to meet its liabilities without a sale of the entire property; that but one bid, that of Phil R. Toll, the purchaser, had been made and that the sale made to him was a private one; that his bid was $76,000, and the terms and conditions of same were shown; this bid as well as the court's entries and orders in regard thereto, including the order of approval and that the receiver make a deed and bill of sale of the property to Toll, were in evidence. Testimony was also introduced as to the value of the property, the maximum estimate being more than $400,000 and the minimum from $60,000 to $75,000. There was also testimony that counsel for plaintiff was cognizant of Toll's bid for the property. Upon this testimony the court overruled the plaintiff's motion, approved the sale and, over plaintiff's objection and exceptions, ordered the receiver to make a deed to the purchaser.

Plaintiff thereupon filed an affidavit for an appeal, which was granted, and, in this state of the record, the plaintiff asks a review.

The error assigned is the overruling of plaintiff's motion to set aside the order approving the sale and directing the receiver to make a deed.

The proceeding upon this motion was heard below, was appealed from, and is presented here upon the theory which seems to be acquiesced in by both parties

**Appeal.**

that the court's ruling thereon was a final disposition of the case, or such a complete determination of same as to have the force and effect of a final judgment or one in which the trial court's jurisdiction has been exhausted (State ex rel. C. B. & Q. Railroad v. Bland, 189 Mo. l. c. 216). Upon no other theory is the case entitled, under our appellate procedure, to a review. The suit out of which the motion in question arose is still pending. Other issues presented by the pleadings and matters of procedure necessary to the disposition of a case of this character have not, in the one instance, been determined, or in the other, complied with; notably, in the first, there remains the court's duty to hear and determine the question as to whether or not the individual defendants have paid for their shares of stock in the company—an issue sharply presented by the pleadings; and second, the duty imposed by law upon the receiver to conserve and collect the assets of the company, liquidate its debts, wind up its affairs and distribute its assets, and make a final report of his administration of the affairs of the company to the court (Sec. 3365, R. S. 1909). The sale of the property, therefore, was but a preliminary step in the proceeding, and the court's ruling upon the motion to set the same aside cannot be construed to be other than an interlocutory order, and hence not appealable.

The right to an appeal being purely statutory, although it is remedial and hence should be liberally construed (Stid v. Ry., 211 Mo. 411), does not authorize us, in the face of the limitations of the statute (Sec. 2038, R. S. 1909), to add to the conditions under which appeals may be taken from interlocutory orders. Notwithstanding the remedial nature of the statute, a strict compliance with its terms is necessary to confer jurisdiction on this court (Millar v. Transit Co., 216 Mo. l. c. 103).

The course pursued by the parties below when this motion was under consideration, and their attitude here, would impel us to review the facts if, as stated, statutory authority existed therefor. We are not only precluded, however, by an absence of statutory power, but for the additional reason that this motion lies on the law side of the court, and in the presence of any substantial evidence a review of same is not permissible (Holden v. Vaughan, 64 Mo. 588; State ex rel. Hartley v. Innes, 137 Mo. App. l. c. 423).

A sufficient examination has been made of the facts to sustain the conclusion that there was substantial evidence to authorize the trial court in overruling the motion. Therefore, for the reasons stated, it follows that this appeal must be dismissed, and it is so ordered. All concur.