In Re SAVINGS TRUST COMPANY OF ST. LOUIS, in Liquidation, v. MARGARET SKAIN, Appellant.—131 S. W. (2d) 566.

Court en Banc, September 5, 1939.

*H. A. & C. R. Hamilton* and *Robert A. Hamilton* for appellant.

48

*Igoe, Carroll, Keefe & McAfee* and *J. W. McAfee* for respondent.

ELLISON, J.—On July 29, 1938, Division 2 of the Circuit Court of the City of St. Louis made an order authorizing R. W. Holt, Commissioner of Finance in charge of the liquidation of the Savings Trust Company of St. Louis (hereinafter called the respondent) to sell certain of the bank's real estate to the appellant for $37,000, less the amount of certain cash adjustments; and further authorizing the respondent to pay $755 broker's commission each to the Joseph F. Dickmann Real Estate Company and the Glick Real Estate Company. This order is hereinafter referred to as the sale order of July 29.

On the same day and pursuant to said sale order the respondent through his special deputy, J. S. Lockett, executed a contract for the sale of said real estate to the appellant and accepted a payment from her of $1000 to apply on the purchase price. Shortly thereafter he received $1000 more. About a month later on August 26 the same court made another order in the same cause at the same term, on its own motion, vacating said sale order of July 29, without notice, hearing or findings of fact, and in the absence of appellant and her counsel. For that reason she contended below and contends here that the order was void, or at least the trial court arbitrarily and oppressively abused its discretion. This second order is hereinafter called the vacating order of August 26.

While, as we have just stated, the trial court's reasons for making the vacating order of August 26 were not set out in its record, nevertheless they are shown in the abstract filed here. They were founded on the belief or suspicion that the sale of the real estate was the result of fraudulent collusion between the appellant, or her broker, the Glick Real Estate Company, and the broker for the respondent, the Joseph F. Dickmann Real Estate Company, whereby the real estate was sold for less than its fair market value. But that question on its merits is not involved on this appeal. The determinative issues are: (1) the proper interpretation of the statutes, sale order and sale contract; (2) the rights of the appellant thereunder; (3) the status of the Commissioner of Finance as a liquidating officer under the statutes; (4) and the power of the court to make orders of the kind assailed without notice or hearing.

The abstract states that the appellant signed a sales contract and presented it to the respondent's deputy, Mr. Lockett, as a proposal

to purchase the real estate. On the same day he filed his petition in the circuit court recommending the approval by the court of the sale and praying an order authorizing him to accept the offer. After hearing evidence, the abstract says, the court on the same day entered said sale order of July 29, providing: "that R. W. Holt, as Commissioner of Finance of the State of Missouri, be, and he is, authorized for and on behalf of the Savings Trust Company of St. Louis to sell for $37,000 in cash, less the sum necessary to adjust rents, interest, taxes, insurance and other items to date of sale, to Margaret Skain," the real estate above mentioned. The respondent through his deputy, Lockett, thereupon accepted the first installment of the purchase price and signed the sale contract. One of the terms thereof was that the sale be consummated on or before September 30. It also recited that the property "is this day sold" to appellant.

About two weeks later on August 12, the respondent filed a motion to set aside the sale order. The motion was not based on any alleged infirmity in the proceedings theretofore had, or on any lack of authority in the *deputy* Commissioner to sign the sale contract; but simply stated certain facts pointing to collusion between the Glick Company and the Dickman Company. It is unnecessary to set them out in this opinion, other than to say the motion detailed, among other things, certain maneuvers and private conferences between the representatives of the two companies in and about the courtroom at the very time the sale order of July 29 was made, and also certain shifting and withdrawal of bids, as well as a failure of the Dickman Company to report advantageous bids. It charged on partial investigation and belief that appellant's offer of $37,000 was less than the fair market value of the property, and that a man named Sam Michelson had offered $38,500. Appellant concedes for the sake of argument that if the allegations of the motion were sustained by proof the court might be justified in setting aside the sale.

Eight days later, on August 20, appellant filed her answer to respondent's said motion to set aside the sale order of July 29. The answer alleged that the contract of sale between her and respondent's deputy was made in good faith, after authorization by the court; that by it the respondent sold the real estate to her; that she had fully complied with the contract and paid $2,000 to respondent's deputy thereunder; that she was ready, able and willing to perform the rest of the contract; and generally denied all the allegations of respondent's motion. Six days thereafter the court of its own motion entered the vacating order of August 26.

After the lapse of three days on August 29, appellant filed her motion to set aside the vacating order of August 26. It alleged the prior proceedings, including the filing of respondent's motion of August 12 to set aside the sale order, and of appellant's answer thereto. Next it alleged these pleadings raised an issue of fact and law

of which the court was fully advised; that the court also knew the parties expected and intended to present evidence thereon and to obtain its decision; but that notwithstanding, the court entered the vacating order of August 26 without notice or hearing and in the absence of the parties.

The motion (of August 29) then charged said action of the court was illegal, invalid, unwarranted and oppressive because the appellant acquired a vested interest in the real estate by virtue of the sale, which could not be taken away except upon the conditions applicable to a breach of contract by a private individual; that she could be deprived of her interest in the property only by a proceeding to which she was a party, and then only after notice to her and an opportunity to be heard; that the court acted without jurisdiction and in excess of its jurisdiction in making said vacating order of August 26; that if the court had a discretion it abused that discretion wantonly, oppressively, wrongfully and illegally in making said vacating order of August 26 as aforesaid; that appellant was thereby deprived of the gains of her own industry and of her property without due process of law and equal protection of the law, in violation of the Fourteenth Amendment of the Constitution of the United States, and Sections 4 and 30 of the Constitution of Missouri.

On August 30 the court heard evidence on appellant's motion of August 29 to set aside the vacating order of August 26. All the foregoing motions and orders were introduced in evidence. It was admitted that shortly after the case was put at issue by the filing of respondent's motion of August 12 and appellant's answer thereto of August 20, counsel for *respondent* requested the court to set the case for an early hearing so evidence could be introduced and a decision rendered before the expiration of the term. (The next term would convene on September 12. Laws 1931, p. 188.) The judge of the court assured counsel he would hear the case early in September and for that reason the cause was not given a definite setting. In that connection the court said at the hearing: "The Court has had no vacation as yet, but I didn't want the term to expire before setting this order (of July 29) aside, so, therefore, I set it at that time (early in September) in my own mind, figuring no harm would be done because it can be reinstated at the end of the term." We understand this to mean the court had made up its mind in advance to set the order aside.

Shortly thereafter the court entered the vacating order of August 26 on its own motion. As regards the absence of notice and hearing the court said: "The Court will admit that they (appellant and her counsel) never had any notice or hearing, but that the motion was set aside of the court's own motion after it heard many ugly rumors, also from the comments of the press, and after a number of the depositors of the closed bank had called the Court's attention to it."

Appellant's counsel then proved by the witness Glick that she paid the respondent $1000 on July 29 when the sale contract was executed and $1000 more on August 5; and that the $2,000 was still in the hands of the respondent. He then rested appellant's case.

Counsel for respondent thereupon stated in open court: "If it is necessary to do so I would like to elicit some—or try to elicit some answers that support the Court's ruling. In view of what the Court said a few minutes ago (evidently referring to the court's remark in the second preceding paragraph) I contemplate, if the court should determine that he ought to reconsider the matter he will not do so until the next term, at which time everybody will have full opportunity to present the facts, or as I claim to be the facts, . . ." The Court: "That is my duty."

Counsel for respondent: "If that is the situation I suppose there is no occasion for me at this sitting, and during your Honor's vacation time, for me to cross-examine Mr. Glick on these matters at this time." Counsel for appellant: "I do want to get the thing in shape to take an appeal, and the Court will first have to act on this motion." The Court: "I am overruling your motion at this time. The motion to set aside the Court's ruling of August 26th is overruled."

Then counsel for respondent, apparently feeling that the record needed further support if it was to be subjected to the test of an appeal, said: "Against the possibility that this record may be of some further importance in this matter, I would like, if the Court will permit me, to say that some of the allegations in the motion filed on behalf of the Finance Commissioner to set aside the order granting the sale to Margaret Skain alleged matters which happened in and about the court room at the time the original order of sale was approved, I was not in court, but I presume some of those matters were observed by the Court, that is, some of the matters I alleged in my motion, so that the record will be complete I wanted to suggest that in the record here, so, if it is true, that is, if the Court, in taking action on this motion, considered those matters that happened at that time, the record may show that is true." The Court answered: "The Court did consider those matters."

At this point in the hearing counsel for Sam Michelson, who, according to the allegations in respondent's motion of August 12, had filed a motion on August 5 to set aside the sale order of July 29, asked to make a statement. He said Michelson was a depositor in the defunct Savings Trust Company, and had made an offer at some prior time to pay $62,000 for the real estate of said trust company and another trust company which was in liquidation. This offer, he said was still open and the evidence showed it would continue to be for 30 days (from its date, we infer). On the proposition that the respondent still retained the purchase money paid him by appellant under her contract, his counsel stated that the money would be re-

funded as soon as possible. The court announced it would make an order during the day for the return of the money, and closed the hearing by again overruling appellant's motion of August 29 to set aside the vacating order of August 26.

I. Appellant contends first that she acquired a vested right in the real estate under the executory sale contract of July 29 signed by her and the respondent. That this would be true in similar transactions between private individuals is so obvious as hardly to call for discussion. The relation of vendor and purchaser exists as soon as a contract for the sale and purchase of land is entered into. Equity regards the purchaser as the owner and the vendor as holding the legal title in trust for him: 66 C. J., sec. 773, p. 1028; R. C. L., sec. 178, p. 464; Levine v. Humphreys (Div. 1), 297 Mo. 555, 249 S. W. 395, 398(2). This equitable principle may be invoked in actions at law: Kansas City v. K. C. Terminal Ry. Co., 324 Mo. 461, 475-476, 23 S. W. (2d) 1006, 1012; and that even though the purchaser has not been put in possession: Manning v. North British & Mercantile Co., 123 Mo. App. 456, 460-461, 99 S. W. 1095, 1096-7.

II. But respondent did not make the sale contract as a private individual. He acted in his capacity as Commissioner of Finance in charge of the liquidation of the Savings Trust Company, under authority of the circuit court's sale order of July 29 and pursuant to the applicable statutes in Article I, Chapter 34, Revised Statutes 1929 (Mo. Stat. Ann., pp. 7526-7566). Appellant contends these statutes made the respondent a statutory receiver; and that he was as much bound in that capacity by the equitable doctrine stated in the preceding paragraph as if he had acted in a personal capacity.

Undoubtedly that is the rule applied to receivers in general, namely, receivers appointed by a court. It is said in 53 Corpus Juris, section 196, page 157: "Contracts so duly authorized and entered into have been said to be in reality contracts of the court, which cannot be annulled or revoked by the court except upon the same conditions as are applicable to the breach of his engagements by a private individual; . . ." Similarly, 23 Ruling Case Law, section 82, page 77, says: "the contracts of a receiver made with express or implied authority cannot be annulled at the pleasure of the court." [See, also: American Bonding & Trust Co. v. B. & O. S. W. Ry. Co., 124 Fed. 866, 877; Farmers Loan & Trust Co. v. Eaton, 114 Fed. 14, 16; McAnally v. Glidden, 30 Ind. App. 22, 27, 65 N. E. 291, 293.]

Answering this contention respondent asserts that he was not a statutory receiver, and that because of the special provisions of our statutes he and the trial court were not amenable to the equitable doctrine stated above. On this point he cites State ex rel. Songer v. Fidelity & Deposit Co. of Maryland (Mo. Div. 1), 53 S. W. (2d) 1036, 1041, 85 A. L. R. 955, 961. Respondent is mistaken in saying that case holds the Commissioner of Finance is not a statutory re-

ceiver when he liquidates the assets of a failed bank. What the case rules is that the Commissioner "is not a receiver appointed by the court, acting under its authority as an officer of the court, . . . The Commissioner receives his authority from the statutes, and is thereby authorized to take possession of insolvent banks and administer their assets, and, while he is required to act under the supervision and order of the circuit court in some particulars, we find no provision for his"—doing certain things not necessary to be stated here.

On the contrary, In re Mt. Vernon Bank, 334 Mo. 549, 553, 66 S. W. (2d) 850, 851, refers to the status of the Finance Commissioner in liquidating a closed bank as "a special kind of receivership" created by statute; and in Kirrane v. Boone, 334 Mo. 58, 568, 66 S. W. (2d) 861, 865, the late lamented STURGIS, C., who wrote the Songer opinion, denominates the Commissioner in such instances as "statutory receiver," and cites the Songer cases. This language was quoted with approval by the court en banc in State ex rel. Moberly v. Sevier, 337 Mo. 1174, 1178, 88 S. W. (2d) 154, 136. There can be no doubt that the Commissioner has the status of a receiver in administering the assets of a bank in failing condition, though it is true he is appointed by statute and not by the court, and derives part but not all of his authority from the statutes. However, it is held in several cases that Article I, Chapter 34, Revised Statutes 1929, supra, is a code unto itself. So we turn to the statutes to see whether there is anything in them which exempts respondent from the application of the equitable doctrine controlling private vendors of real property.

Section 5316, Revised Statutes 1929 (Mo. Stat. Ann., p. 7547), gives the Commissioner discretionary power to take possession of the assets of a bank whenever an examination discloses that it is in failing condition. Under subdivision 2 of Section 5319, and Section 5321, the circuit court may order him to surrender possession. Section 5330 provides the Commissioner "upon such terms as the court or judge thereof in vaction shall direct, may sell or otherwise dispose of all or any of the real and personal property of such corporation or banker." The next section specifies how the Commissioner shall deposit money collected; and Section 5332 provides: "He may, in the name of the delinquent corporation or banker, execute, acknowledge and deliver any and all deeds, assignments, bills of sale, releases, extensions, satisfactions and other instruments necessary and proper to effectuate any sale, lease or transfer of real or personal property or to carry into effect any power conferred or duty imposed upon him by this article or by order of the circuit court or judge thereof in vacation. Any instrument executed pursuant to the authority hereby given shall be as valid and effectual, for all purposes, as though the same had been executed by the officers of the delinquent

corporation by authority of its board of directors, or by the private banker personally.''

We find nothing in these statutes saying or intimating that a contract of sale made by the Commissioner as receiver with the approval of the court is not as sacred and inviolable as a contract made by an individual. The implications are to the contrary. In making a sale he acts under the order of the court, just as an ordinary receiver would do; and if the deed or contract is to have the effect of one executed by the banker personally (as the statute declares) then certainly it is to be governed by the rules applicable to the latter so far as they are not in conflict with the statute. So we hold the equitable doctrine mentioned in paragraph I hereof applies to the respondent's sale contract of July 29.

III. Another point made by the respondent presents this theory. He argues that the provisions of Section 5332 are permissive, not mandatory; that the sale order of July 29 was the same; and that since the order merely ''authorized'' him to make the sale, neither he nor the court was obliged to carry it out after he came into possession of information indicating the sale price was too low. Three cases are cited in support of this contention. Two of them deal with public auction sales of the assets of insolvent banks, which were subject to *confirmation* by the supervising court: State ex rel. Sorensen v. Denton State Bank, 126 Neb. 486, 253 N. W. 670; State ex rel. Spillman v. American State Bank, 122 Neb. 42, 239 N. W. 214. [See, also, 9 C. J. S., sec. 516, p. 983; 11 A. L. R., p. 399, note.] These cases are not in point, for Sections 5330 and 5332 do not require the sales provided for therein to be subject to confirmation by the court. Neither did the order of sale in this case provide that the sale should be subject to further confirmation by the court.

The third case cited, which respondent regards as being most ''directly upon the subject'' is People ex rel. Nelson v. Ridgeway State Bank, 218 Ill. App. 112, 116, 4 N. E. (2d) 647. But we cannot agree that it is applicable here. In this Nelson case the receiver petitioned for and obtained a court order granting him leave to sell certain assets of an insolvent bank for $800 cash. At his request the prospective purchaser deposited $50 ''as evidence of good faith;'' and thereafter demanded a delivery of the assets, at the same time tendering the balance due of $750. But in the meantime the receiver had received a greatly increased offer from another source, and he requested the court to vacate the original order authorizing a sale for $800. The court did so. The Illinois Court of Appeals upheld that ruling for two reasons: (1) because the original order was merely permissive and not mandatory; (2) because the complaining bidder did not allege in his petition that the assets were *sold to him*, but merely said the $50 deposit was paid as an *evidence of good faith*. On that point

the opinion says: "It is very natural, and, in fact, it would be the duty of the receiver, if the sale was not *completed,* upon receiving information that the securities were worth more than had been offered, to sell them to the highest bidder." (Italics ours.)

All three of these decisions lack an essential element which is present in the case at bar, viz., the fact that a written sale contract was executed and money was paid pursuant to a plenary order of sale. It may be true that if a court enter an order for the sale of property, but before the receiver and the court have taken any binding steps toward the consummation of the sale a more advantageous offer is obtained—it may be true, we say, in those circumstances that the court can revoke the order. But here the respondent pursuant to a court order received purchase money and made a written contract of sale which passed the equitable title to the appellant—or at least conferred a vested right. Without question the contract would have bound the trust company if it had made it in its own right, and the statute says any authorized instrument executed by the Commissioner shall be as valid and effectual as if executed by the banker personally.

True our statute, Section 5332, supra, does not specifically mention *contracts* among the instruments which the Commissioner of Finance may execute to pass title on a sale of a failed bank's assets. But it does say he may in the name of the bank execute *any and all* deeds, assignments, bills of sale, releases, extensions, satisfactions and *other instruments necessary and proper to effectuate any sale, lease or transfer* of the bank's property. If he could not make a contract of sale that binds the bank it would tend to restrict the field of purchasers to those who have cash available to make their offers good, and bidding would be chilled especially in rural communities where liquid wealth is scarcer. The statute says the Commissioner may *lease* the bank's real estate. How can he do that if he cannot make a contract? We think he has that power when authorized by the court.

IV. Still another argument presented by the respondent is that the contract of sale was made and signed by J. S. Lockett, Special Deputy Commissioner, whereas the statutes, Sections 5332 and 5323, provide all instruments shall be executed by the Commissioner of Finance except where he has delegated that authority to a deputy; also that the trial court's order of sale of July 29 specifically authorized *him* (respondent) to sell the land to appellant. His point is that no evidence was introduced showing *he* had delegated to Lockett the power to make the contract. We do not understand this contention. The second paragraph of the abstract states in narrative form without contradiction that after the sale order had been made the contract of sale was signed by the respondent "acting by and through J. S. Lockett, his Special Deputy."

Furthermore, the deputy commissioner filed the petition for the

sale order in the name of the respondent, and in the same way filed the motion of August 12 asking that the sale order be set aside. In that motion he recited facts pointing to the conclusion that the sale was tinctured with fraud; and stated that because he believed his real estate brokers were acting in good faith, *he* "caused the petition for the sale order to be filed." Respondent's counsel asked for a hearing on that motion, and when evidence was heard on appellant's motion of August 29 to set aside the vacating order of August 26, he called the court's attention to certain facts alleged in "my" motion of August 12, and asked the court if it had those incidents in mind. In other words, respondent's counsel, who, of course, represent *respondent*, have utilized the work done and papers filed by the deputy commissioner both below and here. Furthermore, the authority of the deputy commissioner was not challenged below, and appellant was given no opportunity to show whether he did in fact have authority to make the sale. For these reasons this assignment is disallowed.

V. Next respondent contends that the contract of sale expressly recited: "This contract is subject to the approval of the Circuit Court of the City of St. Louis;" and that in view of this appellant cannot complain because the court disapproved it when the vacating order of August 26 was entered. The contract did contain that provision. But the abstract recites it was first signed by appellant and presented to the respondent as a proposal. Since he was Finance Commissioner, and could not enter into such agreements without the approval of the circuit court, naturally it recited it was to be subject to such approval. After the respondent had obtained the court's approval he signed it. The sale order of July 29 does not follow the contract in detail, but contains nothing inconsistent with it, and authorizes a sale of the property described therein to the person and for the price named therein without any limitation as to time. We think the contract is fairly within the scope of the order.

Appellant states in his brief that the contract was submitted to the court with respondent's petition for the order of sale. The only direct evidence of that in the record is a recital in respondent's motion of August 12, that appellant's broker presented in open court her "written offer" to purchase the real estate for $37,000, when the sale order of July 29 was made. Elsewhere the abstract states without dispute that that written offer was the contract signed by appellant above. In our opinion the record as a whole supports an inference that the contract was brought before the court and was approved by the sale order, thereby dispensing with the necessity of any further approval. But however that may be, this question, also, was not raised in the trial court, and appellant had no chance to meet it.

VI. Respondent makes the further point that the sale order of July 29 was an administrative order within the court's supervisory power, and is not subject to review on appeal, citing: Hurley v. Universal Clay Co., 278 Mo. 408, 415, 213 S. W. 28, 30; Harduval v. Merchants,' etc., Savings Bank, 204 Ala. 187, 188, 86 So. 52. We are unable to see how the Missouri case can be accepted as authority here. It was a stockholder's appeal from the overruling of his motion to set aside an order approving a receiver's report of sale of the assets of an insolvent corporation. This court held the appeal would not lie, because the order was not such a complete disposition of the issues in the receivership case as to have the effect of a final judgment exhausting the trial court's jurisdiction. But the facts there were very different from those before us now. The instant proceeding is a distinct and separate branch of the liquidation of the Savings Trust Company, in which the appellant (otherwise a stranger to the liquidation) claims to have been finally deprived of a vested right in the real estate involved.

The Harduval case from Alabama is authority against respondent. There the appellants merely made an offer to purchase certain property in receivership, and the receiver took it only for presentation to the court—he did not sell the property. The trial court on a hearing rejected the offer, and the Supreme Court ruled the appellants had no recourse. But the decision holds one whose offer to purchase at a judicial sale is *accepted,* though subject to confirmation by the court, acquires vested rights, and is entitled to have the sale confirmed in the absence of fraud, gross inadequacy, etc.; and may *appeal* from any final order or decree injuriously affecting his right as a purchaser. We think the right of appeal exists in this case from the trial court's order of August 26, vacating its sale order of July 29. [State ex rel. McKinney v. Davidson, 315 Mo. 549, 555, 286 S. W. 355, 357; Bushman v. Barlow, 328 Mo. 90, 93, 40 S. W. (2d) 637, 638.]

VII. Finally, respondent urges that the vacating order of August 26 was presumptively valid; that the burden was on appellant to overthrow it; and that she should have made a prima facie showing of merit in her defense against the respondent's motion of August 12 praying the vacation order.

Taking up the last point first. Appellant refers us to 34 Corpus Juris, section 530, page 329, where it is said that, ''To obtain an order opening or vacating a judgment, the party applying therefor must allege and show to the court that he has a good and meritorious defense.'' But five pages further on, the same section of the text enumerates as one of the exceptions to the rule: ''Where a judgment by default has been irregularly taken, as . . . after the case was at issue.'' Appellant had already filed an answer to respondent's motion of August 12, in which she pleaded her good faith,

performance of the contract, and denied the allegations of the motion. But the record plainly indicates the court did not intend to hear evidence on the merits, and that counsel for respondent so understood the court's remarks. Furthermore, the rule does not apply here because all the proceedings involved occurred during the judgment term, and the court was acting within its common law powers. [National City Bank v. Pattiz (Mo. App.), 26 S. W. (2d) 815, 816(3). See, also, Scott v. Smith, 133 Mo. 618, 624, 34 S. W. 864, 865.]

As to the other two points. Appellant's counsel concede in their brief that the court's vacating order of August 26 was prima facie valid, and that the burden will be on them to overthrow it. And this is true. The settled rule is that a judgment remains in the breast of the court during the term at which it was rendered, and that the court has inherent jurisdiction during that term to set it aside even on its own motion. [Taylor v. C., C., C. & St. L. Ry. Co., 333 Mo. 650, 656, 63 S. W. (2d) 69, 72.] This may be done, it is said, merely on suggestion, or even at the instigation of a stranger to the record. [Reid v. Moulton (Mo. Div. 1), 210 S. W. 34, 36; Ewart v. Peniston, 233 Mo. 695, 705, 136 S. W. 422, 424; In re Henry County Mut. Burial Assn., 229 Mo. App. 300, 304, 77 S. W. (2d) 124, 126; Cherry v. Cherry, 225 Mo. App. 998, 1000, 35 S. W. (2d) 659, 660.]

But while the court has that general *jurisdiction*, and although an outside suggestion may be the motivating cause of the investigation, it does not follow that the court can act arbitrarily, without giving to the party adversely affected notice and an opportunity to be heard on the new issues. It was held in Dougherty v. Manhattan Rubber Mfg. Co., 325 Mo. 656, 659, 29 S. W. (2d) 126, 127, that such judicial action is *void*. If it is not that it is at least an abuse of discretion from which an appeal will lie. [In re Adoption of Zartman v. Alford, 334 Mo. 237, 246 et seq., 65 S. W. (2d) 951, 955 et seq.; Kelso v. Ross Construction Co., 337 Mo. 202, 227, 85 S. W. (2d) 527, 541; State ex rel. Wendling v. Arnold, 197 Mo. App. 1, 7, 193 S. W. 292, 294 (5); Morris v. Morris, 60 Mo. App. 86.]

As stated in the beginning we do not in any wise rule on the merits of the controversy—that is whether the sale order of July 29 was procured by fraud. Neither does this opinion foreclose the presentation of evidence on any other issue. What we do hold is that the appellant is entitled to a hearing on the issues raised by respondent's motion of August 12 to set aside the sale order of July 29, and appellant's answer thereto filed on August 20. If respondent desires to introduce new issues of fact or law they should be included in his motion. The case has been well briefed on both sides.

Judgment reversed and cause remanded. All concur.