STATE ex rel. James O. STOFFER,
et al., Relators,

v.

The Honorable Weldon W. MOORE,
Judge, 25th Judicial Circuit, et al.,
Respondents.

No. 62965.

Supreme Court of Missouri,
En Banc.

March 9, 1982.

Thomas Strong and Mathew W. Placzek, Springfield, for relators.

Dan L. Birdsong, Rolla, for respondents.

HIGGINS, Judge.

Respondents Circuit Judge and Clerk requested transfer after the Court of Appeals, Southern District, made peremptory its alternative writ of mandamus commanding the trial court to hear a garnishment filed by James O. Stoffer and his wife, Julia, and commanding the circuit clerk to issue a writ of execution, a summons and interrogatories. The execution is based upon a default judgment entered and later ordered set aside by Hon. Eugene E. Northern. Upon the report of the Special Master, Hon. Norwin D. Houser, the court of appeals ruled the order setting aside the judgment null

and void for issuance without affording the plaintiffs-relators reasonable notice and opportunity to be heard. This Court granted transfer and ordered the court of appeals to recall its mandate. The alternative writs of mandamus are quashed.

On February 23, 1979, James Stoffer brought suit in the Circuit Court of Phelps County against Highway Transportation Co., Inc. and Andy Arthur and Rickey Andrew Arthur, for $500,000 damages to person and property, arising out of an automobile-truck collision; Julia Stoffer joined in the suit for $200,000 for loss of her husband's services. All three defendants were duly served with process; none filed a responsive pleading; all failed to appear as commanded.

On May 23, 1979, plaintiffs appeared and the cause was tried as a default matter before Hon. Eugene E. Northern, sitting without a jury. Defendants were not present at the trial and were not represented by counsel. At the close of the plaintiffs' evidence but before the cause was finally submitted, a note was handed to the judge, requesting that he return a long distance telephone call from attorney Frank Evans of Springfield relating to the case on trial. Judge Northern declared a recess and returned Mr. Evans' call, inviting plaintiffs' attorney, Thomas Strong, to listen to the conversation on an extension line.

When the judge reached Mr. Evans, with Mr. Strong listening, Mr. Evans informed the judge that he had been called by Liberty Mutual Insurance Company with a request that he enter an appearance in the case; that the insurance company had not been aware of the matter until that day and had not received the suit papers; that Mr. Evans did not know exactly what the facts were which caused the delay resulting in the default; that the insurance company representative had indicated to Mr. Evans that the papers had been misplaced—delivered to "the agent" instead of to the company; that "someone in the insurance hierarchy had died or may have died or that a death of some particular person may have been the explanation for it"; that there

was "some mixup" causing the delay in getting the summons and copy of the petition to the proper people—some confusion or miscommunication between the insured and the company; that Mr. Evans did not know whether it was a mistake, misunderstanding or confusion, or what the problem was, but that Mr. Evans wished to enter his appearance on behalf of the insured, and to have the proceeding continued until he could present "some sort of defense in the matter."

The judge indicated that he might take the matter under advisement and give Mr. Evans time to file an answer; that Mr. Evans should file a motion showing why an answer had not been filed and the judge would decide whether to enter a default judgment based upon the evidence he had heard earlier in the day or take the matter under advisement, permitting defendant time to file a pleading out of time. At that point Mr. Strong interjected that it would be more appropriate for the judge to enter a default judgment and then permit the filing of a motion to set the judgment aside, if Liberty Mutual could show good cause for defendants' failure to appear. By the end of the conversation, which continued for approximately 10 to 30 minutes, the judge stated that he would probably enter a default judgment. He assured Mr. Evans that if a default judgment was entered and if a timely and proper motion was filed by defendants showing they had good reason and excuse for being in default, the judgment would be set aside. Mr. Evans informed the judge that he would immediately file an entry of appearance and the appropriate motion in response to whatever rulings were made that day, and do so without additional delay in the case.

Following the long distance telephone call, Judge Northern and Mr. Strong had further conversation in the clerk's office. The judge was inclined to take the matter under advisement; for various reasons given by Mr. Strong and at the latter's insistence, the judge resumed the bench and entered a default judgment for James Stoffer for $180,000 and a judgment for Julia Stoffer for $10,000.

Judge Northern considered that what Mr. Evans told him relative to the cause of the default would constitute a sufficient basis upon which to set aside a default judgment, if one should be entered, and that all that was required of defendants would be the timely filing of a motion setting forth what Mr. Evans had told him over the telephone. It was Judge Northern's intention to set the default judgment aside if a timely motion was filed setting forth the reasons outlined by Mr. Evans, without further discussion of the matter. It is the judge's position that he had made it clear to Mr. Strong that he would do so, and that Mr. Strong understood the judge's intentions to set the default judgment aside if such a motion was filed.

Relators assert that Mr. Strong did not understand that the judge would set the default judgment aside upon the filing of a motion without conducting a hearing, and that he assumed if a motion were filed there would be a hearing on the motion to determine the issue of good cause.

At no time during his conversations with the judge on May 23, 1979, or thereafter, did Mr. Strong indicate to the judge that if a motion to set aside the default judgment was filed he desired to be heard on the matter before the judge acted. Neither during the telephone conversation nor the subsequent conversation with the judge did Mr. Strong voice any objection to the judge's statement that he would set aside the default judgment if a motion was filed, and he did not argue that there was not good cause for defendants' default in answering. On the other hand, Mr. Strong did not expressly waive a hearing or consent to the setting aside of the default judgment.

On May 24, 1979, Mr. Strong called Mr. Evans to arrange for the taking of depositions of people who had information touching the question whether Liberty Mutual had good cause for being in default. A few days later, Daniel Birdsong, an attorney from Rolla, Missouri, advised Mr. Strong that he had been employed to represent defendants. Mr. Strong suggested disquali-

fication of Judge Northern from further proceedings; Mr. Birdsong agreed. The two agreed to take depositions on June 6, and agreed to submit further proceedings to Hon. Weldon W. Moore, also of the Circuit Court of Phelps County, and tentatively agreed to appear in Judge Moore's court on June 14. Judge Moore agreed to hear further proceedings in the matter on June 14; Judge Northern was never informed of any change of judge.

In a telephone conversation with Mr. Strong on June 4, 1979, Mr. Birdsong advised Mr. Strong that he had filed a motion to set aside the default judgment and that he would mail him a copy. Mr. Birdsong filed that motion June 4, 1979, and the clerk of the court notified Judge Northern of this filing. On this day, Judge Northern made his handwritten docket entry:

6 4 79 Be it remembered that on 5–23–79 and before this matter was finally submitted to the court and judgement by default entered, attorney for defendant, in the presence of atty for plaintiffs, Thomas Strong, requested of this court leave to file an answer out of time and if default judgement entered to file motion to set aside and leave to file answer— And be it further remembered that the court in the presence of plaintiff's attorney advised defendant's attorney that if proper motion was filed showing that defendant had good reason and excuse for being in default that if a default judgement was entered it would be set aside otherwise the judgement would remain in full force and effect.—And be it further remembered that the court indicated it should take the matter of default under advisement and then entered judgement at the insistence of pltf's attorney.

Now therefore defendant having filed its motion to set aside the default judgement heretofore entered, said motion being verified and the court finding that failure to plead by defendants was not for vexatious delay but was due to unavoidable circumstances, and to refuse to set aside the default judgement would be to deny justice, and the court now believ-

ing that the amount of damages fixed is excessive under the facts and circumstances; that the question of negligence and damages should and ought be determined in a contested adversary proceedings there being in the court's mind a serious question as to the admissibility of considerable medical testimony

Now therefore for the reasons stated and upon court's own motion the default judgement entered on 5–23–79 is set aside and for naught held and defendants are granted leave to file responsive pleading on or before June 15, 1979.

On June 5, 1979, Mr. Strong was notified by Mr. Birdsong's office that the court on the preceding day had sustained the motion to set aside the default judgment. Later that day, Mr. Birdsong called Mr. Strong and read the order of June 4 to him. In view of this order, the attorneys cancelled the depositions set for June 6 and cancelled the contemplated hearing of June 14. On June 6, Mr. Strong received by mail an unverified copy of the motion to set aside the default judgment; on June 7, Mr. Strong received by mail a copy of the docket entry of June 4. Both documents were sent to Mr. Strong by Mr. Birdsong instead of the circuit clerk or Judge Northern. On June 5, Mr. Strong advised Mr. Birdsong that he was taking the position that the order of June 4, was null and of no effect because of the failure of the court to give plaintiffs prior notice of its contemplated action and an opportunity to be heard on the merits of the motion or of the propriety of its intended action.

On August 21, 1979, Mr. Birdsong wrote Judge Northern requesting a hearing on the motion to set aside the default judgment, stating that Mr. Strong viewed the order of June 4 null and void for lack of notice or opportunity to be heard. Mr. Birdsong wrote this letter because plaintiffs had taken the position they could "ignore a void order with impunity", and this is what they were doing. On August 24, 1979, Judge Northern denied Mr. Birdsong's request for the reason that "another" hearing on the question of setting aside the default was

not needed because plaintiff's counsel was informed of the court's inclination, stating:

After the telephone conversation in the presence of plaintiff's counsel, the Court again advised Plaintiff's counsel that if a motion was filed by the Defendant, the Court would permit Defendant to file an answer out of time. The Court told counsel that he was reluctant under the circumstances to enter a Default Judgement because he felt that in the interest of justice a Default Judgement should not be entered and the Defendant given an opportunity to file an answer and contest the severity of Plaintiff's injuries. The Court stated to counsel when counsel continued to insist on a Judgement, "You know I could enter a default which you would be more than glad for the Court to set aside."

On April 7, 1980, relators filed interrogatories to the garnishee, Liberty Mutual Insurance Co., and requested the clerk to issue a writ of execution and to issue and have served on the garnishee a summons and interrogatories. On that same day, Judge Northern disqualified himself and transferred the cause to Judge Moore. On April 9, 1980, the circuit clerk, on the advice of counsel, refused to issue the execution. On May 9, 1980, relators filed a motion to compel the circuit clerk to issue execution, summons, and interrogatories to garnishee. On May 22, 1980, relators filed a notice calling up before Judge Moore the motion to compel the clerk to issue garnishment process. That same day, Judge Moore considered the motion to compel and overruled it; the present action resulted.

The Special Master recommended making the alternative writ of mandamus peremptory on a conclusion that relators' due process right to notice and an opportunity to be heard on defendant's motion to set aside the default judgment had been abridged and that consequently the order of June 4, 1979, purporting to set aside judgment was null and void. Respondents argued that plaintiffs received notice and an opportunity to be heard on May 23, 1979, once during the three-way phone conversation among Mr.

Strong, Judge Northern, who heard the underlying case and entered the default judgment, and Mr. Evans, the attorney who telephoned Judge Northern while relators were presenting their evidence at trial, and again during a conversation between Mr. Strong and Judge Northern subsequent to the phone conversation. The Special Master rejected this argument, reasoning that the only notice given that day by Judge Northern to Mr. Strong of his intention to set aside the default judgment was subject to multiple conditions precedent and was indefinite as to time. He further reasoned that since the motion to set aside the judgment had not yet been filed on that day and the facts and law relevant to said motion had not been and could not have been ascertained at that time by Mr. Strong, plaintiffs were not given an opportunity to be heard consistent with due process standards.

The court of appeals adopted all but one of the Special Master's recommendations and made peremptory its alternative writ of mandamus commanding Judge Moore to hear on its merits the garnishment filed by relators and commanding the clerk to perform the acts previously refused. The court of appeals disagreed with the Special Master's conclusion that the defendant's motion to set aside the default judgment was still pending and consequently declined to adopt the recommendation to make peremptory the alternative writ of mandamus to Judge Moore to void the docket entry of June 4, 1979, setting aside judgment. The court of appeals held that the trial court's jurisdiction to act upon the motion had expired ninety days after it was filed, when the motion if viewed as for a new trial was deemed to have been denied pursuant to Rule 78.06 (1979).

1. No opinion is expressed as to this principle; it is not necessary to the present decision. A comparative reading of Rules 68.03 and 68.01 (Masters appointed by circuit courts) raises some question about it. Cf., *In re Connaghan*, 613 S.W.2d 626, 628 (Mo. banc 1981); *In re Panek*, 585 S.W.2d 477, 479 (Mo. banc 1979) (disciplinary proceedings). The present case is distinct because, unlike the aforementioned cases, no hearing was conducted; the Master's

The issue before this Court is whether Judge Moore properly refused to issue execution; this depends on whether Judge Northern exceeded his jurisdiction in setting aside the default judgment. By stipulation of the parties, resolution of the latter question is reduced to whether plaintiffs' right to notice and opportunity to be heard on the merits of the motion to set aside the default judgment has been abridged. Stipulation of the parties excludes from this action the issue of whether good cause supported Judge Northern's order.

The fact questions have been considered by a Special Master. The court of appeals ruled that the recommendations of the Master, which it appointed pursuant to Rule 68.03, are entitled to the same deference due a trial court in a court-tried case, citing *In re C____ W____ B____*, 578 S.W.2d 610 (Mo.App.1979) and *In re W____ K____ M____*, 537 S.W.2d 183 (Mo.App. 1976). Those cases engrafted the clearly erroneous standard of review onto Rule 68.-03.[1] Under the standard of Rule 73.01, if applied, the Master's findings failed to consider Judge Northern's affidavit which in the present case is of considerable legal significance; the findings are for this reason insufficient under the standard of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

Judge Northern, Mr. Strong and Mr. Evans submitted affidavits concerning the events of May 23, 1979. All three are contained in the legal file. The Master made no reference to them.

The affidavit of Judge Northern made on August 15, 1980, states:

That this affiant advised Mr. Evans that if a motion was filed setting forth the grounds as related that the default judgment, if one had been entered, would

findings are based upon depositions, the transcript from the default hearing and the legal file. The three-way telephone conversation and discussion immediately after (the crucial events in this case) are not contained in the record. The deference given in appellate review to the fact finder's ability to judge credibility during a hearing is not involved. Rule 73.01(c)(2).

be set aside and he would be permitted to file an answer out of time; Mr. Strong was on the line at all times during this conversation with Mr. Evans and participating therein;

That upon conclusion of the telephone conversation, this affiant and Mr. Strong returned to the courtroom where there was a discussion as to whether or not the Court should or would enter a default judgment; this affiant advising Mr. Strong that he most certainly intended to permit the defendant to file answer out of time and therefore there was little use in entering up the judgment; Mr. Strong urged the Court to enter judgment and argued that his client was entitled to have the judgment entered even though it would later be set aside; this affiant stated to Mr. Strong during the discussion that "you realize that I could enter a judgment in such an amount that your client would be most happy to have set aside", and he acknowledged that he did so realize.

That in view of the fact that Mr. Strong adamantly insisted that his client was entitled to have a judgment entered upon conclusion of the hearing, and the Court having informed all the parties that if defendants filed their motion, judgment, if entered, would be set aside and both Mr. Strong and Mr. Evans having been so notified and advised, judgment was entered.

That the order entered by this affiant on June 4, 1979 was in compliance with

statements made to both Mr. Strong and Mr. Evans and at time such statements were made Mr. Strong had knowledge and understanding that the default judgment, if entered, would be set aside and defendants granted leave to file answer; that at no time did Mr. Strong request a hearing on Motion to set aside judgment or the intended action of the Court to set aside judgment.[2]

The affidavit of Mr. Evans made on July 31, 1980 states:

I specifically requested the court to not enter a judgment and to instead grant leave to defendant to file an answer out of time. Judge Northern then advised me that a default judgment had not been entered yet but that he would probably do so and then set the judgment aside upon the filing of a timely motion. I then assured the court that such a motion would be promptly filed.

The affidavit of Mr. Strong made August 28, 1980 recites portions of letters written in August 1979 by Judge Northern and Mr. Birdsong (concerning the latter's request for a hearing in view of plaintiffs' contention that the order setting aside judgment was a nullity). It does not attest to Mr. Strong's knowledge of the events of May 23, nor does it refute the affidavit of Judge Northern.

The significance of a judge's affidavit in this type case was addressed in *State ex rel. Murphy v. Aronson*, 330 S.W.2d 140 (Mo. App.1959).[3] In that case the plaintiff-relator sought to prohibit the judge from pro-

2. Plaintiffs have objected to the contents of this affidavit as hearsay and conclusionary. Much of the affidavit is an account of events which is neither hearsay nor conclusionary. The events recalled are facts, not conclusions, and are based on first hand knowledge. Judge Northern's recitation of what was said is hearsay but is admissible since it carries none of the dangers associated with hearsay. Plaintiffs had a full opportunity to cross-examine Judge Northern during his deposition. Plaintiffs have suggested no reason why Judge Northern's credibility should be questioned. As shown below, the affidavit of Judge Northern is viewed as part of the judgment of May 23, 1979, an official action. Absent some evidence to the contrary there is a presumption of regularity and right action afforded to judicial action. *See*

*Baker v. Baker*, 274 S.W.2d 322, 327 (Mo.App. 1954). Plaintiffs do allege that "the record itself reveals that he (Judge Northern) does not always clearly express himself." The record, having been thoroughly searched does not support plaintiffs' allegation.

3. Plaintiffs argue this case, *Clark v. Quality Dairy Co.*, 400 S.W.2d 78 (Mo.1966), and *Baker v. Baker*, 274 S.W.2d 322 (Mo.App.1954), are not controlling in the present instance because of factual difference. The legal principle regarding the use of the judge's affidavit is not dependent on the facts of the case. The remainder of this opinion's reliance on these cases is based upon the persuasive reasoning therein, and not because they are controlling.

ceeding further in a divorce action because the court's prior order setting aside a divorce decree was alleged to be null and void for failure to afford plaintiff notice and an opportunity to be heard. By stipulation, the parties submitted the issues of fact upon the affidavits of the judge and plaintiff's attorney. The court of appeals ruled that to the extent the affidavits were in conflict, the affidavit of the judge prevailed. *Id.* at 145. The appellate court viewed the judge's affidavit as formally attached to his order setting aside the decree. *Id.* at 145. The court held:

> We consider the affidavit of the respondent as an explanation or narration of what occurred in the course of performing his judicial duties. If he had attached a similar statement to his order when made December 2, 1958, we would have it before us now as a part of the proceedings in the divorce action and would accord it full consideration. Adopting the affidavit of respondent, as we do, we find that relator was given an opportunity to be heard.

*Id.* at 145–46.

◼ Here, the order of June 4, 1979, fully states the court's reasons for setting aside the judgment, and described the attending circumstances; it is entitled to full consideration and is persuasive on what occurred on May 23, 1979. Judge Northern's affidavit serves to supplement his original default judgment. Unlike *State ex rel. Murphy v. Aronson, supra,* the record here contains other evidence; however, nothing therein contradicts Judge Northern's recital of the events of May 23, 1979, as evinced by the judgment, supplemented by affidavit, and the order setting it aside. The affidavit of Judge Northern is important if not dispositive evidence of what the court did and of what Mr. Strong was informed, and the failure to consider it is erroneous as a matter of law. *Murphy v. Carron, supra; State ex rel. Murphy v. Aronson, supra.*[4]

◼ Rule 75.01 (10th ed. 1979) provides that the trial court retains control of a judgment for thirty days from the date judgment is entered. During this time and on its own initiative, the court may *inter alia* vacate the judgment and order a new trial. If, as in this case, a motion to set aside judgment is filed within the fifteen days after judgment is entered, it may be treated as a motion for new trial; extending the time during which the court may act from thirty to ninety days. *Gorzel v. Orlamander,* 352 S.W.2d 675, 677 (Mo.1961); *J & J Window Sales, Inc. v. Mueller,* 567 S.W.2d 153 (Mo.App.1978). Rules 78.04, .06. Although this timely filing permits denominating the motion as one for a new trial, and extends the period for court action, if the court sets aside a default judgment within the initial thirty days, "the court is deemed to have acted on its own initiative; and the motion is considered as only a 'suggestion to the court.'" *Diekmann v. Associates Discount Corp.,* 410 S.W.2d 695, 697 (Mo.App.1966) (citing *Owens v. Owens,* 280 S.W.2d 867 (Mo.App.1955); *Mid-States Equipment Corp. v. Hobart Welders Sales & Service,* 233 S.W.2d 757 (Mo.App.1950)). This is true also when the order setting aside the default judgment refers to the defendant's motion to set aside judgment and sustains it. *Lambert Brothers, Inc. v. Tri City Construction Co.,* 514 S.W.2d 838, 842 (Mo.App.1974). Judge Northern's order of June 4th states that judgment was set aside "upon the court's own motion."

◼ The distinction between the court's own action in setting aside a default judgment and that made upon motion of a party bears directly on whether plaintiff was accorded procedural due process. If the judgment was vacated pursuant to defendant's motion plaintiffs would have been entitled to five days notice. Rule 44.01(d), (10th ed. 1979). Where, as here, the court has acted on its own motion, this rule is not applicable. *See, Long v. Stilwell Homes, Inc.,* 333

---

4. If this case was an appeal, it would be remanded with direction to the fact finder to redetermine the fact in consideration of the judge's affidavit. Because this is an action for mandamus, the facts were originally determined at the appellate level, and in the interest of judicial economy, the cause is retained for final determination.

S.W.2d 103, 106 (Mo.App.1960). Although at the time this case arose Rule 75.01 (10th ed. 1979) did not expressly require notice or an opportunity to be heard,[5] case law mandated that it be afforded to the party to be adversely affected. *E.g. Hoppe v. St. Louis Public Service Co.*, 361 Mo. 402, 235 S.W.2d 347 (banc 1950); *Savings Trust Co. of St. Louis v. Skain*, 345 Mo. 46, 131 S.W.2d 566 (banc 1939); *Caldwell Paint Mfg. Co. v. Lebeau*, 591 S.W.2d 1 (Mo.App.1979). In *Hoppe v. St. Louis Public Service Co., supra*, this Court reaffirmed that:

> There can be no question about the inherent power of the trial court to set aside a verdict and grant a new trial, at any time during the term in which it is returned, in the reasonable exercise of its discretion, * * *. This power is 'subject only to the qualifications that it must give the parties reasonable notice, allow them to be heard, and act upon reasonable grounds and not arbitrarily.'

*Id.*, 235 S.W.2d at 350, quoting from *Lee v. Baltimore Hotel Co.*, 345 Mo. 458, 136 S.W.2d 695, 697 (1939). Plaintiffs question court's power only as to the procedural manner in which it was exercised.[6]

The requirements of "reasonable notice" are flexible and whether it has been given in a particular case depends upon the facts of that case. *Clark v. Quality Dairy Co.*, 400 S.W.2d 78 (Mo.1966); *Baker v. Baker*, 274 S.W.2d 322 (Mo.App.1954) and cases cited. Reasonable notice is that which is "suitable to the case" or "such notice or information of a fact as may fairly and properly be expected or required in the particular circumstances." *Id.* at 326, citations omitted. The purpose of such notice is that "the party to be affected adversely 'may appear for his own protection'" and "to afford 'opportunity for a litigant to present his views as to matters instantly before the court which may affect his rights.'" *Id.* at 327, citations omitted. The requirements of notice are situation de-

pendent and it is reasonable if it serves these purposes.

The record, when viewed as a whole, including the affidavit of Judge Northern, given the deference to which it is entitled, indicates that Mr. Strong was fully apprised of the court's inclination to grant defendant's motion to set aside the judgment so long as it stated "good reason and excuse for being in default" and was otherwise in proper form. Plaintiffs contend that because a judgment cannot be set aside without a showing of good cause, they are justified in assuming that a full adversarial hearing on this issue necessarily had to occur. It is argued that Judge Northern never said he would set the judgment aside, only that he might do so. As evidence of their assumption they cite the scheduled deposition with various parties to collect evidence on the issue of good cause. They argue that Mr. Birdsong's cooperation in this regard supports their position.

The surprise which plaintiffs' attorney implies he experienced when he learned the judgment was set aside, is not consistent with the information conveyed to him on May 23, 1979. The record shows that Mr. Strong had to persuade the court to enter the default originally; that the court preferred taking the matter under advisement.

During the three-way phone conversation of May 23, Mr. Evans stated that whatever response, pleading or motion was appropriate would be promptly filed. On June 4, Mr. Birdsong notified Mr. Strong by telephone that he was filing or had filed a motion to set aside the default judgment. Plaintiffs were therefore informed of the time table within which they had time to contest the matter and request a hearing.

In *Clark v. Quality Dairy Co., supra*, this Court said:

> We see no basis for the appellant's complaint that the notice failed to specify what action it intended to take and the

---

**5.** In 1981, Rule 75.01 was modified to expressly require an opportunity to be heard.

**6.** Plaintiffs do argue that the court exceeded its jurisdiction to act because no good cause was

shown. They cannot be heard to complain about this, however, because the parties have stipulated that the issue of good cause is not a part of this action.

grounds therefor. The only reasonable inference from this notice was that the court was considering the action which it took. To have advised appellants what action was to be taken might well have been considered to show that the court had already made up its mind, making a hearing futile . . . .

*Id.* 400 S.W.2d at 83–4. This reasoning is equally applicable in the present case.

Concerning Mr. Birdsong's participation, the record shows he was acting under the impression, created perhaps by his conversations with Mr. Strong, that the court had expressed no inclination as to the merits of granting a motion to set aside the default judgment. The actions of Mr. Birdsong are not in any event persuasive evidence of what Mr. Strong could properly assume. The former was not present on the 23rd of May and his compliance with Mr. Strong's scheduling of depositions and a hearing before Judge Moore does not impair Judge Northern's power under Rule 75.01 (10th ed. 1979). Mr. Strong was apprised of Judge Northern's position on May 23, and from that date to June 4, neither requested a hearing before Judge Northern, nor moved to disqualify him.

■ Judge Northern properly exercised his power to maintain control over the default judgment when he set it aside. Rule 75.01 (10th ed. 1979). To his knowledge, plaintiffs were informed of the court's thinking and acquiesced in his intended action by failing to object or request a hearing. Plaintiffs were given such notice as could "fairly and properly be expected or required under the circumstances." *Clark v. Quality Dairy Company*, 400 S.W.2d at 83; *State ex rel. Murphy v. Aronson*, 330 S.W.2d at 144. Having been so notified, plaintiffs have no basis for complaint. They were given an opportunity to be heard and waived it. *Clark v. Quality Dairy Co., supra; State ex rel. Murphy v. Aronson, supra; Baker v. Baker, supra.* The order setting aside the judgment was not under these circumstances in excess of the court's jurisdiction for failure to afford due process.

The record further indicates that after June 4, Mr. Strong and Mr. Birdsong cancelled the deposition previously scheduled to prepare for the "good cause" hearing before Judge Moore, which was also cancelled. This is contrary to plaintiffs' position that the order of June 4 was a nullity. From June 4, 1979 to the date of the commencement of the execution proceedings, plaintiffs never informed Judge Northern or Judge Moore that they were entitled to a hearing on the issue of good cause and having not been afforded one, were ignoring the order of June 4 as null and void. Plaintiffs contend that they are entitled to ignore with impunity an order which is void. They cite no authority for this proposition. At the same time they argue that defendants "had the option (and obligation, if it was complaining of anything the trial court did) to file a notice of appeal . . ." (parenthesis theirs). Clearly it cannot be both ways. If the defendants have this "obligation" so do the plaintiffs. Notwithstanding this, the record shows that it was Mr. Birdsong who attempted to remedy plaintiffs' problems concerning due process when, on August 21, he requested a hearing before Judge Northern.

Resolution of the question presented by the unique circumstances of this case is consistent with the balance which must be struck between the principles of fairness fundamental to due process, and the power of the circuit court to maintain control for 30 days over the judgments it renders. Rule 75.01. It is also consistent with the principle that a trial on the merits is a favorite of the Law. *E.g., Clark v. Quality Dairy Co., supra; Whitledge v. Anderson Air Activities*, 276 S.W.2d 114 (Mo.1955).

The alternative writs heretofore issued are quashed.

All concur.